541 F.2d 312
 93 L.R.R.M. (BNA) 2001, 79 Lab.Cas. P 11,685
 TRUCK DRIVERS LOCAL UNION NO. 807, INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, Plaintiff-Appellant,
v.
The BOHACK CORPORATION, Defendant-Appellee.
TRUCK DRIVERS LOCAL UNION NO. 807, INTERNATIONAL BROTHERHOOD
OF TEAMSTERS, Petitioner,
v.
Honorable Jacob MISHLER, Chief Judge, United States District
Court, Eastern District of New York, Respondent.
 Nos. 881, 1066, Dockets 75-7694, 76-3003.
 United States Court of Appeals,
Second Circuit.
 Argued April 13, 1976.
Decided Aug. 9, 1976.
 
 J. Warren Mangan, Long Island City, N.Y., for plaintiff-appellant-petitioner.
 Frederick T. Shea, New York City (Roger J. Karlebach and Kelley, Drye & Warren, New York City, of counsel), for defendant-appellee.
 Before LUMBARD, HAYS and GURFEIN, Circuit Judges.
 GURFEIN, Circuit Judge:
 
 
 1
 We have before us two consolidated actions: (1) an appeal by Truck Drivers Local Union No. 807 ("the union"), from an order of the United States District Court for the Eastern District of New York (Chief Judge Mishler) dismissing the union's petition to confirm a grievance award; and (2) a petition for a writ of mandamus directing the District Court to dissolve an injunction issued against the union, to stay its remand of certain issues to the bankruptcy judge, and to compel immediate submission of certain issues to the grievance procedure provided for in the collective bargaining agreement. For reasons that appear below, we reverse the district court's grant of a preliminary injunction against the union under our mandamus jurisdiction, and affirm the rest of the district court's order.
 
 
 2
 In March, 1973 the Bohack Corporation ("Bohack") and the union entered into a three-year collective bargaining agreement under the terms of the National Master Freight Agreement and the New Jersey-New York Area General Trucking Supplemental Agreement. On July 30, 1974 Bohack filed a petition under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., and by order of the same date was allowed to continue to operate its business as a "debtor-in-possession."[1] At that time, more than 120 members of the union were employed by Bohack as truckdrivers.
 
 
 3
 On December 16, 1974, four and one-half months after the petition was filed, Bohack decided to terminate most of its operations at the Bohack Square Meathouse and to receive certain food products from Shopwell's warehouses in trucks operated by Shopwell employees who were members of another local union. As a result, more than sixty Bohack truckdrivers lost their jobs. The union immediately filed a grievance against Bohack, contending that Bohack had breached Article 32 of the Master Agreement which purported to limit the right of the Employer to transfer to others work done by members of the local union.[2] At a meeting of the New York City Joint Local Grievance Committee held in December, Bohack argued that this grievance could not be decided by the Local Committee but was a matter for the National Grievance Committee since it involved an interpretation of the National Master Agreement.[3]
 
 
 4
 Though at first it had found otherwise,[4] the committee, on rehearing, found, on May 16, 1975, that Bohack had violated Article 32 of the agreement, and entered an award favorable to the union ordering Bohack to cease and desist from having its bargaining unit work subcontracted out. Neither Bohack nor the union had sought permission of the bankruptcy judge to submit the dispute to the grievance procedure.
 
 
 5
 The next stage in the eventual elimination of all jobs held by Bohack truckdrivers was Bohack's change in grocery suppliers, from the Filigree Company to the companies of Krasdale and Bozzuto, in May, 1975. The Krasdale deliveries were made by its own drivers, and additional Bohack workers thus lost their jobs.
 
 
 6
 On May 27, 1975, the union instituted a suit in state court to confirm the grievance award, which Bohack removed to the federal court. Bohack refused to comply with the award and in June, 1975, when Buzzuto drivers took over its deliveries, more Bohack truckdrivers were out of work. By the end of June, 1975, only 32 members of the union were still employed. The union was advised in late June that Bohack intended to terminate the remaining 32 truckdrivers on July 3, 1975. The union struck and began to picket on June 30, 1975. The same day, on motion of Bohack, the bankruptcy judge (Judge Parente) issued a temporary restraining order against the strike, and on July 16, 1975, he issued a preliminary injunction restraining the union from engaging in picketing or strikes against Bohack, basing his jurisdiction on Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.
 
 
 7
 On July 18, 1975, the remaining 32 workers were terminated. On that day, Bohack also moved for the first time to reject the collective bargaining agreement under § 313 of the Bankruptcy Act, 11 U.S.C. § 713.
 
 
 8
 The union appealed to the district court from the grant of the preliminary injunction. Chief Judge Mishler signed an order to show cause but struck the provision suspending Judge Parente's preliminary injunction. Chief Judge Mishler informed counsel that he doubted the jurisdiction of the Bankruptcy Court under § 301, and suggested that a complaint be filed under § 301 in the district court. Apparently no new complaint was filed by Bohack.
 
 
 9
 The union started a new action, however, pursuant to § 301(a), 29 U.S.C. § 185(a), to compel Bohack ". . . to specifically perform its collective bargaining agreement with plaintiff and to submit any grievances between them to grievance procedure." Bohack's answer included a counterclaim seeking arbitration if authorized by the Bankruptcy Court pursuant to Bankruptcy Rule 919(b), discussed infra.
 
 
 10
 On November 19, 1975, Chief Judge Mishler vacated the preliminary injunction issued by the bankruptcy judge but issued a temporary restraining order against the union.[5] He dismissed the union's petition to confirm the arbitrator's award, and remanded to the bankruptcy judge "the issue of the advisability of granting the debtor leave to arbitrate." A hearing was set for November 26 to decide the employer's motion for preliminary injunctive relief. On November 25, Judge Costantino signed an order to show cause why the temporary restraining order should not be dissolved on the ground that it was entered in violation of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq.
 
 
 11
 The union's motion to dissolve the temporary restraining order and the employer's motion for preliminary injunctive relief were both heard by Chief Judge Mishler on November 26. He denied the union's motion to dissolve the temporary restraining order and decided to "continue the terms of the t.r.o." issued on November 19, until the bankruptcy judge should decide whether to allow arbitration of the subcontracting dispute under Bankruptcy Rule 919(b) and whether to permit Bohack to reject its collective bargaining agreement under § 313(1) of the Bankruptcy Act, 11 U.S.C. § 713(1).[6]
 
 
 12
 On December 12, 1975, the union filed a notice of appeal from the judgment dismissing the union's petition to confirm the arbitration award. The union did not appeal from the order continuing the t.r.o. On December 30, 1975, the union filed its petition for the writ of mandamus described above. By order of January 16, 1976, the appeal and the petition were consolidated.
 
 I.
 
 13
 The union did not appeal from the district court's grant of injunctive relief against its activities, apparently on the theory that what had been issued remained a nonappealable temporary restraining order. See Grant v. United States, 282 F.2d 165 (2 Cir. 1960). However, the words used are not controlling on whether the order amounts to a grant of preliminary injunctive relief appealable under 28 U.S.C. § 1292(a) when the practical effect of the refusal to dissolve the temporary restraining order is the equivalent of the grant of preliminary injunctive relief. Morning Telegraph v. Powers, 450 F.2d 97, 99 (2 Cir. 1971), cert. denied, 405 U.S. 954, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1972); Hoh v. Pepsico, Inc., 491 F.2d 556, 560 (2 Cir. 1974). Accord, Telex Corp. v. International Business Machines Corp.,464 F.2d 1025 (8 Cir. 1972) (per curiam). When the district court extended for an indefinite period of time the terms of the temporary restraining order issued on November 19 and refused to dissolve it, the order became appealable as the grant of a preliminary injunction.[7] However, the union failed to file a timely appeal from this order, and thus we lack appellate jurisdiction to review its validity.
 
 
 14
 The union does seek a writ of mandamus, however, directing the district court to vacate its order restraining the union from engaging in activities protected by Section 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104. Although such a writ is an extraordinary remedy, and is not merely a substitute for appeal, Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943), we believe in this case the writ should issue because the district court acted beyond its jurisdiction in restraining the union. "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." Roche v. Evaporated Milk Ass'n,supra, 319 U.S. at 26, 63 S.Ct. at 941; Bankers Life & Cas. Co. v. Holland,346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953); DeBeers Consol. Mines Ltd. v. United States, 325 U.S. 212, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945); Ex parte Republic of Peru, 318 U.S. 578, 63 S.Ct. 793, 87 L.Ed. 1014 (1943).
 
 
 15
 The Norris-LaGuardia Act, 29 U.S.C. §§ 101-115, deprives the federal courts of jurisdiction to issue temporary restraining orders or injunctions in any case "involving or growing out of a labor dispute," except "in strict conformity with the provisions of this chapter." Act, § 1, 29 U.S.C. § 101. Section 4 of the Act, 29 U.S.C. § 104, specifically deprives the federal courts of jurisdiction to issue orders restraining strikes or peaceful "patrolling" such as the picketing enjoined here. And sections 7 through 9 of the Act, 29 U.S.C. §§ 107-109, impose procedural safeguards including hearing witnesses in open court and a specific finding of irreparable injury to property which public officials are unable to protect, before the issuance of any injunction or temporary restraining order.[8]
 
 
 16
 The injunctive remedy is sought to be justified, however, under Section 301 of the National Labor Relations Act, 29 U.S.C. § 185, which empowers the district courts to hear "suits for violation of (collective bargaining) contracts." While Section 301 has been held to provide jurisdiction to enjoin protected union activity under certain circumstances, the circumstances are carefully defined. Boys Market, Inc. v. Retail Clerks Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), held that in aid of its jurisdiction under § 301 to enforce collective bargaining agreements, a district court could enjoin a strike in violation of a contractual "no-strike" clause where the subject of the dispute was covered by a mandatory arbitration clause, and the Court adopted the view that "the employer should be ordered to arbitrate, as a condition of his obtaining an injunction against the strike." 398 U.S. at 254, 90 S.Ct. at 1594, quoting dissenting opinion in Sinclair Refining Co. v. Atkinson, 370 U.S. 195, 228, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), cited with approval in Buffalo Forge Co. v. United Steelworkers of America, --- U.S. ----, 96 S.Ct. 3141, 49 L.Ed.2d ---- (1976). We have held such an order to the employer to be essential to jurisdiction. Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586, 588-89 (2 Cir. 1971), cert. denied, 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972); New York Telephone Co. v. Communications Workers of America, AFL-CIO, 445 F.2d 39, 50 (2 Cir. 1971).
 
 
 17
 That requirement is of the essence here. For when the employer is not ordered to arbitrate, the union is unable effectively either to arbitrate or to strike. Such a result is unsupportable as a matter of policy under the Norris-LaGuardia Act.[9] See Buffalo Forge Co. v. United Steelworkers,supra. Since Bohack had not indicated a willingness to abide by the arbitration prior to filing its counterclaim, and since the bankruptcy judge had not ordered the debtor to submit to the grievance procedure, he surely lacked jurisdiction, even if a Bankruptcy Judge ever has jurisdiction to make orders under Section 301, to enjoin a strike or picketing. Nor did the district court, even with its limited power to enforce Section 301, have jurisdiction to issue such injunctive relief in view of the withdrawal of jurisdiction from the federal courts in the Norris-LaGuardia Act. In re Third Ave. Transit Corp., 192 F.2d 971, 973 (2 Cir. 1951), clearly held that the Norris-LaGuardia Act restricts the power of a bankruptcy court in reorganization proceedings. Whether or not permission from the Bankruptcy Court was necessary for a valid arbitration, a question we discuss below, there was never an order to the employer to arbitrate which would have supported jurisdiction under the Boys' Market exception to the Norris-LaGuardia Act.
 
 
 18
 The argument is made that to allow picketing in the case of this financially troubled debtor is to put it out of business. That is, unfortunately, sometimes the sad outcome when a union and an employer cannot come to terms. But the policy of our labor laws is simply to provide rules for the handling of labor disputes, not to prohibit the use of economic power in the resolution of such disputes. By filing under Chapter XI an employer does not become clothed in immunity from union action. As we recognized in Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc., 519 F.2d 698 (2 Cir. 1975), and Brotherhood of Railway, Airline and Steamship Clerks, etc. v. R.E.A. Express, Inc., 523 F.2d 164 (2 Cir.), cert. denied, 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388, 44 U.S.L.W. 3344 (1975), the debtor in a bankruptcy proceeding has other means for release from unlivable conditions in a collective bargaining agreement by petitioning for permission to reject the contract. But the power to permit rejection of the agreement in particular circumstances does not confer an antecedent jurisdiction on the court to enjoin picketing in spite of the Norris-LaGuardia Act. We conclude, therefore, that the district court did not have jurisdiction, without ordering arbitration, to enjoin the picketing or other lawful union activity, and hence will grant the writ of mandamus to the district court to dissolve any such order.
 
 
 19
 We recognize that the passage of time has allowed the collective agreement to expire and that there are no longer any members of the union in the employ of Bohack. We express no views on the remaining rights of the union at this juncture.
 
 II.
 
 20
 The district court denied enforcement of the grievance award on two grounds: first, that the parties had not sought and received permission of the bankruptcy judge to arbitrate, as is required by Rule 919(b) of the Bankruptcy Rules, and second, that the Joint Local Committee which made the award was, under the terms set forth in the Master Agreement, without jurisdiction to decide the dispute. We agree with the district court that enforcement must be denied because the bankruptcy judge had not approved the submission of the dispute to the grievance machinery, and do not decide whether the Joint Local Committee had jurisdiction.[10]
 
 
 21
 Rule 919(b) provides that "(o)n stipulation of the parties to any controversy affecting the estate the court may authorize the matter to be submitted to final and binding arbitration." The rule is silent on whether judicial authorization is required where an existing contract provides for arbitration.
 
 
 22
 The question thus presented is whether an existing contractual agreement to arbitrate authorizes direct submission of a dispute to arbitration when one of the parties is a debtor-in-possession under Chapter XI, or whether the bankruptcy court must "authorize" the arbitration as provided for in Rule 919(b). To answer this question, however, we must first consider whether the agreement to arbitrate is still in effect.
 
 
 23
 We have concluded that an obligation to arbitrate, solemnly undertaken, is not subject to a unilateral disavowal even by a debtor-in-possession. See L. O. Koven & Brother, Inc. v. Local Union No. 5767, United Steelworkers of America, AFL-CIO, 381 F.2d 196, 203 (3 Cir. 1967). For while such a debtor, as trustee, speaks for the creditors as well as itself, it may not abrogate a contractual obligation save by statutory or judicial permission. Bankruptcy Act § 313, 11 U.S.C. § 713.
 
 
 24
 The agreement to arbitrate is itself a contract which creates rights and duties, and its survival in the setting of bankruptcy proceedings has been recognized in this circuit. In Schilling v. Canadian Foreign Steamship Co., Ltd., 190 F.Supp. 462 (S.D.N.Y.1961), a debtor of the trustee sought to invoke the arbitration clause of their contract when the trustee sued on the debt; the trustee refused to proceed with the arbitration. Nevertheless, the district court ordered the trustee to arbitration, rejecting the argument that Rule 919(b)'s predecessor statute, Section 26 of the Act, 11 U.S.C. § 49, "evince(d) a congressional policy that the trustee in bankruptcy shall have the right to abrogate agreements for arbitration."[11] 190 F.Supp. at 463.
 
 
 25
 In Tobin v. Plein, 301 F.2d 378 (2 Cir. 1962), the trustee in bankruptcy petitioned the referee for leave to commence arbitration proceedings against a former stockholder of the bankrupt, pursuant to an arbitration clause in a contract. The referee granted leave but was reversed by the district court. This court reinstated the referee's order. The issue arose under Section 26 of the Bankruptcy Act, quoted above, which also provided for the procedure to be used in the appointment of arbitrators.[12] The court, in rejecting the argument that the procedure of Section 26 must be applied, noted that "this section is clearly drawn to provide arbitration machinery where no contractual arrangements exist. It does not supersede explicit contractual provisions. Schilling v. Canadian Foreign S.S. Co. Ltd., D.C.S.D.N.Y., 190 F.Supp. 462." 301 F.2d at 381.
 
 
 26
 While Tobin v. Plein is not a holding precisely on point, the clear implication is that a contractual agreement to arbitrate survives the filing of a petition in bankruptcy.
 
 
 27
 We have recently held, however, that upon the filing of a Chapter XI petition, statutory requirements precedent to the termination of a collective bargaining agreement by the employer under Section 8(d) of the National Labor Relations Act, 29 U.S.C. § 158(d), do not prevent its rejection by the bankruptcy court under Section 313(1) of the Bankruptcy Act. Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc., supra, 519 F.2d 698; Brotherhood of Railway, Airline and Steamship Clerks, etc. v. R.E.A. Express, Inc., supra, 523 F.2d 164. We reasoned that the status of the debtor-employer is, in some respects, analogous to that of a successor employer so far as an existing collective bargaining agreement is concerned, insofar as the debtor is a "new juridical entity."
 
 
 28
 That does not mean that the agreement ceases to exist. It means that for the narrow purpose of resolving otherwise conflicting provisions of the labor and bankruptcy laws, "(u)ntil the debtor . . . assumes the old agreement or makes a new one, it is not a 'party' under section 8(d) to any labor agreement with the union and is simply not subject to the termination restrictions of the section." 519 F.2d at 704. We went on to hold that Section 313(1) of the Bankruptcy Act permits rejection of a labor agreement, but Judge Feinberg was careful to note that "the Bankruptcy Act . . . does not authorize a debtor-in-possession to ignore its obligations under the Labor Act any more than it can ignore those imposed by the Internal Revenue Code." 519 F.2d at 706. We added that "the bankruptcy court must move cautiously in allowing rejection of a collective bargaining agreement." Id. at 707. Of course, the statement that the debtor is not a "party," and the analogy to the successor employer, cannot be taken literally, since neither affirmance nor rejection of the collective bargaining agreement would be possible by one not a party to it. See Countryman, Executory Contracts in Bankruptcy: Part II, 58 Minn.L.Rev. 479, 489 n. 259 (1974).
 
 
 29
 What we have here, then, is a contract in limbo. It is not an existing contract to be enforced by arbitration without court permission. Yet, if the bankruptcy court orders arbitration, the contract is of sufficient vitality to support such an order. We conclude that the party seeking to arbitrate under a collective bargaining agreement must seek and receive authorization of the bankruptcy court for other reasons as well.
 
 
 30
 There must be judicial control over the exercise of the right to arbitrate just as there is over other rights and duties of the bankrupt. For now an additional consideration has been added, the rights of the creditors. See Johnson v. England, 356 F.2d 44 (9 Cir.), cert. denied, 384 U.S. 961, 86 S.Ct. 1587, 16 L.Ed.2d 673 (1966).[13]
 
 
 31
 Moreover, we can see no reason why court approval must be had for arbitration upon a stipulation (Rule 919(b)) and dispensed with when the arbitration was agreed upon in an earlier contract. In either case, the same rights of creditors are involved and the obligation of the bankruptcy court to protect all concerned is the same.
 
 
 32
 Since the agreement has expired by its terms, however, the scope of any arbitration may be limited. Whether an arbitrator can order a debtor-in-possession to reinstate the employment of men who have been discharged is a question we need not decide. Cf. United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).
 
 
 33
 The bankruptcy judge will have to determine: (1) whether to affirm the contract, or whether the debtor has so conformed to the contract as to make it binding, see In re Public Ledger, Inc., 161 F.2d 762, 767 (3d Cir. 1947), cited with approval in REA Express, Inc., supra, 523 F.2d at 170;[14] (2) whether to grant the debtor's petition to reject the agreement as onerous, adhering to our admonition in Kevin Steel to "move cautiously in allowing rejection of a collective bargaining agreement," 519 F.2d at 707; and (3) whether to order arbitration under its terms in any event, and on what issues.
 
 
 34
 It may seem anomalous that we should affirm a remand to decide on whether to reject a contract that, by its own terms, has expired. Issues remain, however, which depend upon the decision on remand. Upon affirmance of the contract, the agreement to arbitrate survives the expiration of the contract as to disputes arising during the term of the contract. See United Steelworkers of America v. Enterprise Wheel & Car Corp., supra. Rejection of the contract is deemed a breach of contract as of the time of filing the Chapter XI petition. 8 Collier on Bankruptcy, P 3.15(7) at 206 (14 ed. 1976). Even if the contract is rejected that does not necessarily mean that arbitration should not be ordered, though the issues may be different.[15] Moreover, if the contract is rejected, the employees become creditors of the estate and may have a claim for damages against the estate; if the contract is affirmed or found to have been assumed, the employees may have a first priority claim for wages and other fringe benefits.[16] Countryman, supra at 494.
 
 
 35
 In view of the long time that has elapsed since the filing of the petition, we believe it is in the interests of everyone concerned that the question of whether to reject the collective bargaining agreement should be decided promptly and before any other issues are considered. We agree with Chief Judge Mishler that the bankruptcy judge may proceed to hear witnesses without extensive pretrial discovery. After the decision has been made on whether or not to affirm the contract, the bankruptcy judge should determine in his discretion whether to order arbitration even before Chief Judge Mishler has ruled upon any petition for review of the decision on affirmance or disaffirmance.
 
 
 36
 We therefore remand to the district court with a suggestion that the bankruptcy judge be directed to proceed promptly in conformity with this opinion.
 
 
 
 [1]
 A debtor-in-possession acts with all the powers of a trustee. 11 U.S.C. § 742
 
 
 [2]
 Article 32 reads in part as follows:
 For the purpose of preserving work and job opportunities for the employees covered by this Agreement, the Employer agrees that no work or services of the kind, nature or type covered by, presently performed, or hereafter assigned to the collective bargaining unit will be subcontracted, transferred, leased, assigned or conveyed in whole or in part to any other plant, person or nonunit employees, unless otherwise provided in this Agreement.
 
 
 [3]
 The employer relies on Article 8 of the National Master Freight Agreement, which provides in relevant part, that:
 All factual grievances or questions of interpretation arising under the provisions of the Supplemental Agreement, (or factual grievances arising under the National Master Agreement) shall be processed in accordance with the grievance procedure of the applicable Supplemental Agreement.
 Any request for interpretation of the National Master Agreement shall be submitted directly to the Conference Joint Area Committee for the making of a record on the matter, after which it shall be immediately referred to the National Grievance Committee. Such request shall be filed with both the Union and Employer Secretaries of the National Grievance Committee with a complete statement of the matter.
 
 
 [4]
 After the December hearing, the local committee had ruled that an inter-union jurisdictional dispute between this union and another Teamster local representing the Shopwell employees was involved, and referred the dispute to the Teamster Joint Counsel for resolution, as provided for in Article 30 of the Master Agreement. Article 30 provides that:
 In the event that any dispute should arise between any Local Unions, parties to this Agreement, Supplements or Riders thereto or between any local Union, party to this Agreement, Supplements or Riders thereto and any other Union, relating to jurisdiction over employees or operations covered by such Agreements, the Employer and the Local Unions agree to accept and comply with the decision or settlement of the Unions or Union bodies which have the authority to determine such dispute, and such disputes shall not be submitted to arbitration under this Agreement, Supplements or Riders thereto or to legal or administrative agency proceedings. Pending such determination, the Employer shall not be precluded from seeking appropriate legal or administrative relief against work stoppages or picketing in furtherance of such dispute.
 
 
 [5]
 Judge Mishler's order read, in relevant part, as follows:
 Sufficient cause having been shown therefor, and it appearing that plaintiff is about to commit the acts complained of, to the irreparable injury of defendant, pending the hearing and determination of this motion, plaintiff is hereby restrained and enjoined from conducting a strike, walkout, or work stoppage or establishing a picket line at defendant's various places of business or at the premises of any other party or person doing business with defendant.
 
 
 [6]
 This section provides that:
 Upon the filing of a petition, the court may, in addition to the jurisdiction, powers, and duties conferred and imposed upon it by this chapter
 (1) permit the rejection of executory contracts of the debtor, upon notice to the parties to such contracts and to such other parties in interest as the court may designate;
 
 
 [7]
 28 U.S.C. § 1292(a)(1)
 
 
 [8]
 Section 7 of the Norris-LaGuardia Act, 29 U.S.C. § 107, provides:
 No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute, as defined in this chapter, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court, to the effect
 (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained, but no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof;
 (b) That substantial and irreparable injury to complainant's property will follow;
 (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;
 (d) That complainant has no adequate remedy at law; and
 (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection. . . .
 
 
 [9]
 Indeed, Section 8 of the Norris-LaGuardia Act, 29 U.S.C. § 108 provides that:
 No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.
 
 
 [10]
 If arbitration should ultimately be ordered, the parties could conceivably agree upon the proper grievance jurisdiction, and therefore we need not decide that issue now
 
 
 [11]
 Section 26 of the Act, 11 U.S.C. § 49, reads in part as follows:
 (a) The receiver or trustee may, pursuant to the direction of the court, submit to arbitration any controversy arising in the settlement of the estate.
 
 
 [12]
 Section 26, 11 U.S.C. § 49, continued after the portion set forth in note 11, supra, as follows:
 (b) Three arbitrators shall be chosen by mutual consent, or one by the receiver or trustee, one by the other party to the controversy, and the third by the two so chosen or, if they fail to agree in five days after their appointment, the court shall appoint the third arbitrator.
 
 
 [13]
 While we do not necessarily agree with all the language or reasoning of the court in In re Muskegon Specialties Co., 313 F.2d 841 (6 Cir.), cert. denied sub nom., International Union, United Automobile, Aircraft & Agricultural Implement Workers of America, AFL-CIO v. Davis, 375 U.S. 832, 84 S.Ct. 832, 11 L.Ed.2d 63 (1963), we believe it supports our holding that the bankruptcy judge's authorization (properly exercised) is required in order for the arbitration award to be valid
 
 
 [14]
 Judge Mansfield, in the R.E.A. case, supra, put the issue in terms of whether the employees were misled by the actions of the debtor-in-possession, noting that "the Chapter XI proceeding, which was widely publicized, put the unions and REA employees on notice that changes would be required to avert collapse of REA." 523 F.2d at 171
 
 
 [15]
 If the contract is rejected by the bankruptcy court, it will be deemed to have been breached as of the date of filing of the petition under Ch. XI. But like any other unilateral breach of contract, it does not destroy the contract so as to absolve the parties (particularly the breaching party) from a contractual duty to arbitrate their disputes. Cf. Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers International, AFL-CIO, 370 U.S. 254, 262, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962); In re Pahlberg Petition, 131 F.2d 968 (2d Cir. 1942); 9 Williston on Contracts § 1023D, at 614 (3d ed. 1967). Hence, the provisions for arbitration could continue to support an order of the bankruptcy judge that the parties arbitrate their dispute, though the priority and status of any arbitration award would be a matter of bankruptcy law for the bankruptcy court to decide
 
 
 [16]
 We wish to emphasize that we intimate no view on whether Bohack was within its rights under the contract in eliminating the jobs held by the union members. If the court finds that the contract was assumed or affirmed, a claim for wages or other contractual benefits for the period of the contract after employment ceased would arise only if the arbitrator or the court also finds that the contract was breached by the employer's actions after the petition was filed