**In re William O. PETRUSCH, Jr. d/b/a B & L Distribution Center, Debtor,**

**William O. PETRUSCH, Jr. d/b/a B & L Distribution Center, Petitioner-Appellee,**

v.

**TEAMSTERS LOCAL 317, SYRACUSE, NEW YORK, and New York State Teamsters Council, Health & Hospital Fund/Pension & Retirement Fund, Respondents-Appellants.**

Misc. No. 590.

United States District Court, N. D. New York.

Oct. 6, 1981.

James R. Lavaute, Donald D. Oliver, Grass, Balanoff, Costa & Whitelaw, Samuel J. Costa, Syracuse, N. Y., for William O. Petrusch.

Blitman & King, James R. Lavaute, Donald D. Oliver, Syracuse, N. Y., for Teamsters Local 317.

## MEMORANDUM—DECISION AND ORDER

McCURN, District Judge.

■ This matter comes before this Court on the return of a Show Cause Order, brought by the Respondents-Appellants, Teamsters Local 317 [Union], signed by the Honorable Howard G. Munson, Chief Judge of the Northern District of New York, on September 11, 1981. The Union seeks a stay pending appeal, pursuant to Rule 805 of the Rules of Bankruptcy Procedure,[1] of a Temporary Restraining Order, signed by the Honorable Leon J. Marketos, Bankruptcy Judge of the Northern District of New York, on August 27, 1981, and continued indefinitely by the Order of September 8, 1981. This Order, *inter alia*, enjoins and restrains the Union from the commencement or continuation of picketing the debtor's business or against the debtor's interest to recover a claim against the debtor that arose before the filing of the debtor's Chapter XIII petition with the Bankruptcy Court. The Union requests a stay of Judge Marketos' Order upon the grounds that the Bankruptcy Court does not have subject matter jurisdiction to issue an injunction regarding picketing in a labor dispute under the terms of the Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.*

### I.

The facts giving rise to this litigation are as follows. William O. Petrusch as President of B & L Trucking or B & L Trucking and Cartage, signed several collective bargaining agreements with the Union in 1974 and 1976, covering the years 1974–78 [See Exhibits "1", "2" and "3" in the Bankruptcy Court]. Under the terms of those agreements, B & L was obliged to make certain fringe benefit contributions to the Teamsters Health and Hospital and Pension and Retirement Funds [Funds]. In May 1978, the Funds sued B & L for monies allegedly owing under these agreements. [Debtor Exhibit "B"] An answer was interposed denying the obligation, but nothing further has taken place in that action.[2]

---

1. The parties exhibited some confusion as to the precise matter they were arguing before this Court. Attorneys for the Union indicated that they were arguing the appeal itself. The attorney for the Petitioner-Appellee, argued, quite properly, that in that case, the Union had not followed the proper procedure regarding an appeal from a Bankruptcy Court to the District Court, as set forth in Rules 801, *et seq.* of the Rules of Bankruptcy Procedure.

However, the papers filed by the Union indicate clearly that the Union is seeking a stay of the Bankruptcy Court's injunction insofar as it restrains the Union from picketing debtor's business. The Union did not cite any particular authority to the Court for its power to grant the stay, however, such power is conferred on this Court under Rule 805, cited above.

The argument has also been made by debtor that this Court has no authority to overturn a decision of the Bankruptcy Court's injunction since, in matters of bankruptcy, the district courts and the bankruptcy courts have concurrent jurisdiction under 28 U.S.C. § 1471. How-ever, this Court is dealing with this matter as an appellate court, under the Rules of Bankruptcy Procedure 801, *et seq.* and 28 U.S.C. § 1482. This Court has the power to stay an order or judgment of the Bankruptcy Court, or "other relief pending appeal" as long as such relief was first sought in the Bankruptcy Court. Rule 805. It is clear that the Union first sought a stay of the injunction in respect to picketing in the Bankruptcy Court. The authority of the District Court here can be compared to that of the Circuit Court under Rule 8 of the Federal Rules of Appellate Procedure. *See generally,* 1 Collier on Bankruptcy, ¶ 3.03, 3–273 to 3–286 (15th Ed. 1980).

2. This Court agrees wholeheartedly with the Bankruptcy Judge that it is impossible to unravel the various business entities connected with Mr. Petrusch. However, the status of the various companies is not central to the holding on this motion to stay. [See Transcript, 90–92]

On July 11, 1980, Petrusch, d/b/a B & L Distribution Center, filed a Chapter XIII petition in Bankruptcy Court in the Northern District of New York. The petition was subsequently confirmed on or about November 1, 1980. The Union, apparently, is not on the list of creditors contained in the petition. [Debtor Exhibit "D"]

In July 1981 Petrusch, as President of B & L Trucking received a Mailgram from the Union informing him that, because of the alleged delinquency in Fund fringe benefit contributions, B & L Trucking would be subject to any action Local 317 deemed to be necessary, including picketing. [Debtor Exhibit "C"] When the matter was not resolved, the Union began picketing the Debtor in late July.

On or about August 21, 1981, Petrusch, as President of B & L Distribution Center, filed an unfair labor practice charge with the National Labor Relations Board [NLRB]. He alleged that the picketing by the Union was in violation of 29 U.S.C. § 158(b)(4) of the Labor Management Relations Act. Meanwhile, on August 27, 1981, the Debtor obtained an *ex parte* Temporary Restraining Order without notice to the Union from Judge Marketos restraining the Union from picketing the Debtor's business. At the same time, Judge Marketos signed a Show Cause Order as to why the Union should not comply with the automatic stay provision contained in the Bankruptcy Law, 11 U.S.C. § 362(a)(6).

The Union filed an affidavit and a memorandum of law with the Bankruptcy Judge in opposition to the Debtor's motion for preliminary injunctive relief, and in support of its motion to vacate the Temporary Restraining Order against picketing.

On September 1, 1981, arguments on the motions were presented to the Bankruptcy Court. Petrusch testified that his business had suffered on account of the picketing, and that its continuance would make compliance with the terms of his bankruptcy petition difficult if not impossible. The Union argued that the Bankruptcy Court lacked subject matter jurisdiction under the Norris-LaGuardia Act to enjoin picketing in a labor dispute. 29 U.S.C. §§ 101, 104.

At the close of the hearing, the Judge denied the Union's request to dissolve the TRO against picketing, and continued it until further order of the Court. On September 8, 1981, Judge Marketos found that the Debtor had filed a Chapter XIII petition on July 11, 1980, and subsequently an order of confirmation was entered on or about November 1, 1980. The Judge concluded that "the actions of respondents including the picketing of debtor's business and customers, have resulted in the debtor being unable to comply with the payment requirements" of his plan. Accordingly, the Judge enjoined the Union from suing or picketing the Debtor's business until further order of the Court. [Debtor Exhibit "D"].

On September 14, 1981, the Regional Director of the NLRB advised Local 317 by letter that the charge filed by B & L Distribution Center had lacked merit and had been withdrawn. In the interim, the Union applied to this Court for a stay of the injunction against picketing pending appeal.

II.

The Court first addresses the issue of whether the Bankruptcy Court had subject matter jurisdiction to enjoin this picketing. The Norris-LaGuardia Act provides, in pertinent part that

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101.

The Act goes on to provide, in regard to the courts' power to enjoin picketing,

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in-

volving or growing out of any labor dispute to prohibit any person or persons participating or interested in such a dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

.    .    .    .    .

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, *patrolling*, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute.

29 U.S.C. § 104.

■ It is clear to this Court that the parties here are involved in a labor dispute, as defined in the Act. A labor dispute is "any controversy concerning the terms or conditions of employment, . . . regardless of whether or not the disputants stand in the proximate relation of employer and employee." 29 U.S.C. § 113(c) The Debtor argues here that the Union has no claim against his business, B & L Distribution Center, because this is not the same business entity as B & L Trucking, or B & L Trucking and Cartage. However, the exact business relationship between the parties is irrelevant here. The Union is picketing an entity called B & L Trucking, or B & L Trucking and Cartage at the given address. B & L Distribution Center is located on the same premises.

Debtor argues additionally that the Union is using the labor law as a smokescreen seeking relief for a matter which is not really a labor dispute, but rather a contract matter involving a prepetition debt. The contract at issue here, however, is admittedly a collective bargaining agreement between union and management as to terms and conditions of employment. In addition, the Court feels constrained to add that the Debtor himself sought refuge behind that very same smokescreen when he filed an unfair labor practice charge against the Union. Under the circumstances present here, the Court finds that the parties are engaged in a labor dispute.

■ It is also clear that the Bankruptcy Court is a Federal Court within the meaning of the Act. That term is defined as any court of the United States whose jurisdiction has been or may be conferred or defined or limited by Act of Congress. 29 U.S.C. § 113(d).

The Debtor argues that the Bankruptcy Court has the power to enjoin picketing against the Debtor under the automatic stay provision contained in the Bankruptcy Law contained at 11 U.S.C. § 362(a)(6). That law provides in pertinent part that the filing of a Bankruptcy petition operates as an automatic stay, applicable to all entities of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

The Union argues that the automatic stay provision cannot be applied in a way that is contrary to the specific dictates of the Norris-LaGuardia Act which deprives the federal courts of jurisdiction to enjoin picketing. As support, the Union cites the Court to the Second Circuit case of *In re Third Avenue Transit Corp.*, 192 F.2d 971 (2d Cir. 1951). The debtor in that case had filed for reorganization. The Union demanded a reduction in hours with no diminution in wages, and threatened to strike. The Union struck for one day, and the debtor applied to the reorganization court to enjoin the strike. The reorganization court, under its generally recognized power to preserve the assets of the estate, issued an injunction against the strike. The Second Circuit held that the reorganization court had no jurisdiction to enjoin a strike under the Norris-LaGuardia Act, based on their power to preserve the estate. In 1976, the Second Circuit again held that the Norris-LaGuardia Act prevented the Bankruptcy Court from enjoining a union from striking and picketing an employer who was in Bankruptcy, under § 301 of the Labor Management Relations Act. 29 U.S.C. § 185. *Teamsters Local 807 v. Bohack*, 541 F.2d 312 (2d Cir. 1976), *cert. denied*, 439 U.S. 825, 99 S.Ct. 95, 58 L.Ed.2d 117 (1978).

■ The issue now before this Court is whether the Norris-LaGuardia Act will take precedence over the later codification of the Bankruptcy Court's power to preserve the assets of the Debtor's estate. For the following reasons, this Court holds that the later codification of the Bankruptcy Court's power in this regard does not nullify the Norris-LaGuardia Act's jurisdictional limits on the power of the federal courts to enjoin picketing in a labor dispute.

■ This Court can find no other case where these two provisions have been specifically pitted against each other. However, under basic rules of statutory construction, this Court finds that the specific jurisdictional dictates of the Norris-La-Guardia Act must take precedence over the general power of the Bankruptcy Court. It is a fundamental tenet of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum, regardless of the priority of the enactment. *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976); *Morton v. Mancari*, 417 U.S. 535, 550–51, 94 S.Ct. 2474, 2482, 41 L.Ed.2d 290 (1974) (and cases cited therein). The rationale behind this rule is that it is presumed that when a legislature turns its mind to the details of a subject and enacts a subsequent statute in general terms treating the subject in a general manner not *expressly* contradicting the original act, that statute shall not be considered to affect the more particular law. *Radzanower v. Touche Ross & Co., supra*, 426 U.S. at 153, 96 S.Ct. at 1993.

This Court, from an analysis of the test of the law and the legislative history in question, finds no evidence that Congress considered the effect that the automatic stay provision would have on the Norris-La-Guardia Act.[3] At argument counsel for Debtor admitted that he did not find anything specific in his reading of the legislative history of the Act to imply that Con-

gress meant to repeal the Norris-LaGuardia Act by implication or otherwise.

It appears from a transcript of the Bankruptcy Court proceedings that Judge Marketos apparently found authority to enjoin picketing here under the recent Ninth Circuit case of *Local Joint Executive Board v. Hotel Circle, Inc.*, 613 F.2d 210 (9th Cir. 1980). [Transcript 11–15]. However, in the Court's opinion that case cannot be read to give the Bankruptcy Court jurisdiction to enjoin a union from picketing in a labor dispute. That case dealt specifically with the Bankruptcy Court's power to overturn a collective bargaining agreement as an executory contract, and did not involve the Court's power to enjoin picketing in contravention of the specific dictates of the Norris-LaGuardia Act. The Union, in fact, readily admits that the Bankruptcy Court *does* have the power to overturn the collective bargaining agreements in question here as executory contracts under 11 U.S.C. § 365. *Shopmen's Local 455 v. Kevin Steel Products Inc.*, 519 F.2d 698 (2d Cir. 1975). However, the Second Circuit has specifically held that that power does *not* confer antecedent jurisdiction on the Bankruptcy Court to enjoin picketing in derogation of the Norris-LaGuardia Act. *Truck Drivers Local Union No. 807 v. Bohack Corp., supra*, 541 F.2d at 318.

The additional arguments advanced by the Debtor in opposition to the stay are without merit. Debtor claims that the Norris-LaGuardia Act has outlived its usefulness as a tool for organized labor, and so should be disregarded by this Court. That issue must be addressed by the legislature. In the absence of a repeal of the Norris-La-Guardia Act, this Court must abide by that law's restrictions on its jurisdiction.

The Debtor also argues that this Court should hold that this case should come under the well reasoned exception of *Boys Markets, Inc. v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In that case the Supreme Court

---

3. *See generally* Appendix 2, 3, Collier's on Bankruptcy [15th Ed. 1981] which contains Committee Reports, Senate and House Reports, and Congressional debates on the Bankruptcy Reform Act of 1978.

**830**

held that if the collective bargaining agreement contains an arbitration clause, the parties may be enjoined until the case is submitted to arbitration. The collective bargaining agreements in issue here specifically hold that this dispute is not arbitrable. [¶ 2 of Exhibits "1" and "2"]. There is no basis here upon which to apply this narrow exception to the Norris-LaGuardia Act. The Supreme Court has held that the *Boys Markets* case is not to be read to undermine the continuing vitality of the Norris-LaGuardia Act, and this Court feels constrained not to carve out a further exception to that Act under the Bankruptcy Act, as the Debtor urges us to do. *Boys Markets, Inc., supra* at 253, 90 S.Ct. at 1594.

Finally, the Debtor argues that the Union is acting against its own self interest in that picketing this Debtor will force him out of business, and the Union ultimately will not collect the monies allegedly owing to it. This Court agrees that the wisdom of the Union's action here is open to question on that ground. However, the Second Circuit has specifically held that the Court cannot carve out an exception to the Norris-LaGuardia Act on this basis. In *Bohak, supra,* 541 F.2d at 318, the Court observed:

> The argument is made that to allow picketing in the case of this financially troubled debtor is to put it out of business. That is, unfortunately, sometimes the sad outcome when a union and an employer cannot come to terms. But *the policy of our labor laws is simply to provide rules for the handling of labor disputes, not to prohibit the use of economic power in the resolution of such disputes. By filing under Chapter XI an employer does not become clothed in immunity from union action.* As we recognized in *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.,* 519 F.2d 698, [89 LRRM 3133] (2d Cir. 1975), *Brotherhood of Railway, Airline and Steamship Clerks, etc. v. R.E.A. Express, Inc.,* 523 F.2d 164 (2nd Cir.), *cert. denied,* 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 [91 LRRM 2168] (1975), the debtor in a bankruptcy pro-

ceeding has other means for release from unlivable conditions in a collective bargaining agreement by petitioning for permission to reject the contract. *But the power to permit rejection of the agreement in particular circumstances does not confer an antecedent jurisdiction on the court to enjoin picketing in spite of the Norris-LaGuardia Act.*

 In conclusion, this Court finds that the Bankruptcy Court was without subject matter jurisdiction under the Norris-LaGuardia Act, 29 U.S.C. §§ 101, 104 to issue an injunction enjoining the Union from picketing in this labor dispute. That injunction against picketing is hereby stayed pending appeal.[4]

It is so Ordered.

---

4. In so ruling, the Court does not reach the Union's other grounds for a stay.