**In the Matter of CROWE & ASSOCIATES, INC., a Michigan corporation, Debtor.**

**CROWE & ASSOCIATES, INC., a Michigan corporation, Plaintiff,**

v.

**BRICKLAYERS AND MASONS UNION LOCAL # 2 OF DETROIT, MICHIGAN, Defendant.**

**Bankruptcy No. 81–05430–B.**

**Adv. No. 81–1659.**

United States Bankruptcy Court, E. D. Michigan, S. D.

Dec. 22, 1981.

Stern, Milmet, Vecchio, Goll & Carnago, Professional Corp. by Richard F. Fellrath, Detroit, Mich., for plaintiff.

Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, Professional Corp. by Ann E. Neydon, Detroit, Mich., for defendant.

## OPINION

GEORGE BRODY, Bankruptcy Judge.

The question presented is whether the Bankruptcy Court has the power to enjoin a union from taking strike action to collect a pre-petition debt owed to the union by a debtor.

Crowe & Associates, Inc., (Debtor), filed a voluntary Chapter 11 petition. The debtor is presently constructing a parking ramp in downtown Detroit. Prior to the filing of the petition, the debtor entered into a collective bargaining agreement with the Bricklayers and Masons Union Local # 12 of Detroit, Michigan. The contract re-
quired the debtor to make periodic payments to the union's pension fund. As of the date of the filing of the petition, the debtor was in arrears in these payments in the amount of approximately $36,291.97. After the filing of the petition in bankruptcy, the union made demand on the debtor for satisfaction of this debt, and when the debtor failed to make the required payment, the union withdrew its employee members from the job and threatened disciplinary action against members who might continue to work for the debtor. The debtor then filed a complaint for injunctive relief on the grounds that the work stoppage constituted an attempt to collect a pre-petition debt in violation of section 362(a)(6) of the Bankruptcy Code.[1] A motion for an expedited hearing was granted to determine whether or not the injunction should issue.

The union moved to dismiss the complaint on the ground that the Bankruptcy Court, by virtue of the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq. (47 Stat. 70–73, March 23, 1932), has no jurisdiction to issue the injunctive relief requested. *Truck Drivers Local Union No. 807 v. Bohack Corp.*, 541 F.2d 312 (2d Cir. 1976); *In re Third Ave. Transit Corp.*, 192 F.2d 971 (2d Cir. 1951); *Intern'l. Bhd. of Teamsters v. Quick Charge*, 168 F.2d 513 (10th Cir. 1948); *Petrusch v. Teamsters Local 317*, 14 B.R. 825, 8 B.C.D. 180 (Bkrtcy.N.D.N.Y.1981); *In re Ryan Co., Inc.*, 4 B.C.D. 219 (D.Conn.B.J. 1978).

The union, by its job action, seeks to collect a debt which arose prior to the commencement of the case. Section 362(a)(6) of the Bankruptcy Code provides that

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(6) any act to collect, assess, or recover a claim against the debtor that arose

1. Section 362 stay is itself in the nature of an injunction. Therefore, it was not necessary for the debtor to proceed by way of complaint. The debtor could have merely moved for the union to show cause as to why it should not be held in contempt for violating the section 362 stay.

before the commencement of the case under this title[.]

A labor union is an entity under the Code. § 101(14). Section 362 would, therefore, preclude the union from attempting to collect the pre-petition debt by its job action unless it is not applicable because of the Norris-LaGuardia Act.

The Norris-LaGuardia Act was enacted for the purpose of limiting the circumstances and conditions under which injunctive action could be taken against labor organizations in the context of a labor dispute. The labor injunction had been an important device used by employers to counter organized labor's most effective economic weapons, strikes, boycotts, and picket lines. However, the Act was predicated on the conviction that labor disputes turned on issues of social and economic policy that could not appropriately be resolved by the courts. The legislative solution to the problems confronting workers in a complex industrial economy was union organization and collective bargaining. Since the ready issuance of labor injunctions presented a serious obstacle to the concerted activities of organized workers, Congress decided to remove the federal judiciary from labor disputes. *Scott v. Moore*, 640 F.2d 708, 713 (5th Cir. 1981).

To accomplish this, Section 1 of Norris-LaGuardia provides that

No court of the United States, as defined in this chapter, shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any restraining order or temporary or permanent injunction be issued contrary to the public policy declared in this chapter.

In addition, Section 4 provides that

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in

any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such a dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

(a) Ceasing or refusing to perform any work or to remain in any relation of employment[.]

The debtor apparently concedes that Norris-LaGuardia applies in a bankruptcy case. *Petrusch v. Teamsters Local 317, supra.* The only questions to be decided, therefore, are whether the union and the debtor were engaged in a "labor dispute" within the meaning of Norris-LaGuardia and, if so, whether the dispute is protected by the Act.

A "labor dispute" is defined by the Norris-LaGuardia Act to include

any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee. 29 U.S.C. § 113(c).

There is no "labor dispute" within the meaning of the Norris-LaGuardia Act with respect to the pension fund payments. While pension plan payments are a "term or condition of employment," the debtor has refused to make the payments, which it concedes it owes, only because the Bankruptcy Code prohibits payment of a pre-petition debt to any creditor to the exclusion of other creditors.

■■■ Moreover, even if the amount or existence of the pre-petition debt were disputed, the bankruptcy court is not precluded by the Norris-LaGuardia Act from granting the relief requested.[2] A primary purpose of the bankruptcy law "is to administer an estate as to bring about a ratable distribution of assets among the bankrupt's creditors." *Vanston Bondholders Protec-*

---

**2.** If the claim is disputed, the unions' proper recourse is to file a claim and have it determined by the bankruptcy court. § 1111(a).

*tive Committee v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 239, 91 L.Ed. 162 (1946). Any payment by the debtor of the pre-petition pension fund claims would constitute a preference and would be in contravention of the Bankruptcy Code. *See In re Texlon Corp.*, 596 F.2d 1092 (2d Cir. 1979). The work stoppage was ordered by the union solely for the purpose of attempting "to obtain by improper means what it is restrained from doing by operation of law." *In the Matter of The Ryan Co., Inc.*, 4 B.C.D. 219, 221 (D.Conn.B.J.1978). A labor dispute between a union and an employer "ceases to be a bona fide labor dispute when an unlawful demand on the part of a union is made upon an employer." *Lystad v. Local Union No. 223, Intern'l. Bhd. of Teamsters*, 135 F.Supp. 337, 341 (D.Ore. 1955); *Scott v. Moore, supra.*[3]

A statute is to be read in light of the abuses to be remedied. *Farrell Lines, Inc. v. United States*, 499 F.2d 587, 204 Ct.Cl. 482 (1974). Norris-LaGuardia was enacted to prevent courts from interfering with union conduct directed to the pursuit of the union's legitimate and lawful goals. Norris-LaGuardia did not intend that unions be permitted to compel employers to comply with unlawful and unwarranted demands. There is no "labor dispute" here between the debtor and the union concerning terms or conditions of employment. The union is merely attempting to employ coercive tactics to compel the debtor to do that which it is prohibited from doing by the Bankruptcy Code. The refusal of the debtor to comply with the unauthorized and unwarranted demands of the union can be in no sense termed a labor dispute within the meaning of Norris-LaGuardia. *Cf. Converse v. Highway Const. Co. of Ohio*, 107 F.2d 127, 131 (6th Cir. 1939). If a debtor is unable to operate during a Chapter 11 pro-

ceeding, the likelihood of rehabilitation becomes remote.[4] To permit the present work stoppage to continue will in all probability put the debtor out of business. Norris-LaGuardia permits a union to exercise economic pressure without court interference in pursuit of the union's lawful goals. Norris-LaGuardia, however, does not compel the conclusion that unions are also protected if they employ such power in an attempt to pressure an employer to comply with unlawful demands. It would distort the purpose of Norris-LaGuardia to so hold.

*Bohack* and *Third Ave. Transit Corp.*, relied upon by the union in support of its motion to dismiss, are clearly distinguishable since they deal with disputes which arose after the petition was filed. *Quick Charge* concerned an election dispute which arose prior to filing, but did not involve conduct that was prohibited by the Bankruptcy Act. *Petrusch* does support the position urged by the union but is not persuasive. *Petrusch* accepts without discussion that a "labor dispute" did exist. More importantly, it does not deal with the question as to whether a union has a right by virtue of Norris-LaGuardia to attempt to compel a debtor to do that which he is expressly prohibited from doing by the Bankruptcy Code. The court in *Petrusch* questioned the wisdom of the union's action but held that it was precluded from granting injunctive relief by *Bohack*. However, as pointed out above, *Bohack* did not involve a situation where the debtor was prohibited by law from complying with the demands of the union.

An appropriate order to be submitted.

---

**3.** The union cites *Dunbar v. Painters & Glaziers District Council No. 51*, 129 F.Supp. 417, 35 LRRM 2442 (D.C.D.C.1955) for the proposition that the failure of a debtor to pay a required pension fund payment constitutes a labor dispute within the meaning of Norris-LaGuardia even though the employer failed to make the payment in the belief that the payment was illegal. In *Dunbar*, however, the court found as

a matter of fact that the payment to the pension fund was not illegal. This is distinguishable from the present case where the payment is clearly prohibited.

**4.** The Code recognizes this reality by providing that upon the filing of a Chapter 11 case, the debtor may continue to operate unless the court orders otherwise. § 1108.