In re William O. PETRUSCH, Jr., d/b/a B & L Distribution Center, Debtor.

William O. PETRUSCH, Jr., d/b/a B & L Distribution Center, Respondent-Appellant,

v.

TEAMSTERS LOCAL 317, SYRACUSE, NY & New York State Teamsters Council, Health & Hospital Fund/Pension Retirement Fund, Petitioners-Appellees.

No. 599, Docket 81–5055.

United States Court of Appeals, Second Circuit.

Argued Nov. 13, 1981.

Decided Dec. 15, 1981.

Samuel J. Costa, Syracuse, N. Y. (Grass, Balanoff, Costa & Whitelaw, Syracuse, N. Y., on the brief), for appellant.

James R. LaVaute, Syracuse, N. Y. (Blitman & King, Syracuse, N. Y., on the brief), for appellee.

Before TIMBERS and KEARSE, Circuit Judges, and MURPHY, District Judge.[*]

PER CURIAM:

■ Petrusch, the debtor in a Chapter 13 proceeding, (11 U.S.C. § 1301 *et seq.* (Supp. III 1979)), appeals an order of the District Court for the Northern District of New York staying, pending appeal to this Court, an injunction by a Bankruptcy Judge restraining appellee labor union, Teamsters Local 317, from picketing his place of business in a labor dispute. The District Judge, in a reasoned opinion, held that the Bankruptcy Court was without subject matter jurisdiction because the Norris-La Guardia Act, 29 U.S.C. § 101 *et seq.*, expressly prohibited such injunctions by any United States court. We agree, and affirm.

This appeal therefore, presents the issue whether the Automatic Stay section of the Bankruptcy Reform Act of 1978 (11 U.S.C. § 362), upon which the Bankruptcy Judge relied, supersedes *pro tanto* the historic Norris-La Guardia Act, 29 U.S.C. § 101 *et seq.* Section 4 of that Act (29 U.S.C. § 104) provides:

"No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute (as these terms are herein defined) from doing, whether singly or in concert, any of the following acts:

[*] Honorable Thomas F. Murphy, United States District Judge for the Southern District of New York, sitting by designation.

(e) Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

(f) Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute; ...."

Thirty years ago almost to the day this Court struck down a similar injunction issued in a Chapter X proceeding under the Bankruptcy Act of 1898 (11 U.S.C. § 501 *et seq.* (1976)), involving a threatened union strike of the Third Avenue Transit Corporation which served a million and a half passengers a day. Citing Mr. Justice Frankfurter's concurring opinion in *United States v. United Mine Workers of America*, 330 U.S. 258, 313–14, 320 n.6 (1947), we held: "Both the language and the purposes of that statute [Norris-La Guardia Act] ... forbids such a conclusion. The well established power of the reorganization court to issue orders necessary to conserve the property in its custody must be exercised within the scope of a jurisdiction which is limited by the broad and explicit language of the Norris-La Guardia Act." *In Re Third Ave. Transit Corp., et al., Lehman, et al. v. Quill, et al.*, 192 F.2d 971, 973 (2nd Cir. 1951).

More recently, in *Truck Drivers Local Union No. 807, International Brotherhood of Teamsters v. The Bohack Corporation*, 541 F.2d 312 (2nd Cir. 1976), *cert. denied*, 439 U.S. 825 (1978), also decided under the Bankruptcy Act of 1898, we issued the extraordinary writ of mandamus to the District Judge to vacate his order restraining the union from engaging in actions protected by Section 4 of the Norris-La Guardia Act, saying that "the district court did not have jurisdiction, ... to enjoin the picketing or other lawful union activity, and hence [we] will grant the writ of mandamus to the district court to dissolve any such order." *Id.* at 318.

■ Petrusch contended before the district court that there was no labor dispute between him and the union but only an attempt by the union to collect a pre-petition debt for the Teamsters' funds. The Court correctly disposed of this contention by holding that Petrusch was obliged, by the terms of the collective bargaining agreements between the parties, to make fringe benefit payments to the Teamsters' Health and Hospital Fund and their Pension and Retirement Fund. Because such obligation is part of the terms and conditions of employment, it fits squarely into the Norris-La Guardia Act's definition of a labor dispute. 29 U.S.C. § 113(c), defining a labor dispute, includes "any controversy concerning terms or conditions of employment, ... regardless of whether or not the disputants stand in the proximate relation of employer and employee."

The "Automatic Stay" in all voluntary and involuntary bankruptcies as directed in Section 362(a) of the Bankruptcy Reform Act attaches upon the filing of the petition and applies to all entities included in 8 subdivisions of activities relating to diverse legal and administrative matters. In § 362(b), 8 situations are delineated where the stay does not attach. Labor disputes or picketing are not mentioned in either subsection.

The purpose of the Automatic Stay is explained in the House Report for the Bankruptcy Reform Act, H.R.Rep. 95–595, 95th Cong., 2d Sess., 340, *reprinted in* [1978] U.S.Cong. and Ad.News 6135, 6296–97:

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors...."

■ Nowhere in the legislative history of the Bankruptcy Reform Act of 1978 (Report

of the Committee on the Judiciary, H.R. Rep.No.95–595, 95th Cong., 1st Sess., 1977; Notes of Committee on the Judiciary, Sen. Rep.No.989, 95th Cong., 2nd Sess. 54 *reprinted in* [1978] U.S.Cong. and Ad.News 5788, 5840–41) or in the Report of the Commission on the Bankruptcy Laws of the United States (H.R.Doc.No.93–137, 93rd Cong., 1st Sess., 1973) is any reference made to the Norris-La Guardia Act. Such omissions are to us self-evident proof that Congress never intended to supersede or transcend it, since we cannot believe the Norris-La Guardia Act was to superseded, *sub silentio.*

Concern for the preservation of estates in bankruptcy and prevention from interference in their *status quo* has had a long history and effective remedies bottomed on the concept of *custodia legis,* but with exceptions and limitations. "It is as true of the present law as it was of that of 1867, that the filing of the petition is a *caveat* to all the world, and in effect an attachment and injunction,...." *Mueller v. Nugent,* 184 U.S. 1, 14 (1902); *cf., Ex Parte Baldwin, et al.,* 291 U.S. 610, 615 (1934). Congress, pursuant to its constitutional powers, carved out an exception in labor disputes by withdrawing jurisdiction of all United States courts. Art. III, Sec. 1.