**CROWE & ASSOCIATES, INC., a Michigan corporation and debtor in possession, Plaintiff-Appellee,**

v.

**BRICKLAYERS AND MASONS UNION LOCAL NO. 2 OF DETROIT, MICHIGAN, Defendant-Appellant.**

Civ. No. 82 70262.

Bankruptcy No. 81–05430–B.

United States District Court, E. D. Michigan, S. D.

May 17, 1982.

**226**

Richard F. Fellrath, Detroit, Mich., for plaintiff-appellee.

Ann E. Neydon, Detroit, Mich., for defendant-appellant.

## MEMORANDUM OPINION

DeMASCIO, District Judge.

Crowe & Associates, Inc. (Crowe) filed a voluntary petition for reorganization pursuant to the Bankruptcy Reform Act of 1978. Prior to filing the petition, Crowe was delinquent in payments due to various employee benefit funds required under its collective bargaining agreement with appellant, Bricklayers and Masons Union Local No. 2 (the union). The collective bargaining agreement did not contain a no-strike clause. Indeed, it specifically provided that the union could strike if Crowe failed to make the payments required to be made to the employees' benefit fund. As of the date it filed its Chapter 11 petition, Crowe owed the union more than $36,000. The union demanded immediate payment of the delinquent sum. When Crowe failed to make payment, the union ordered its members off the job site. Crowe then filed a complaint in the bankruptcy court seeking to enjoin the strike. Without a hearing, the bankruptcy court entered a permanent injunction against the strike on January 15, 1982. The bankruptcy court held that the strike violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a)(6). The bankruptcy court further held that the Norris-LaGuardia Act did not bar the issuance of an injunction for two reasons: first, the dispute between Crowe and the union was not a "labor dispute" within the meaning of the Norris-LaGuardia Act, 29 U.S.C. § 113(c); and, second, the Norris-LaGuardia Act bars injunctions against legal strikes only, not illegal strikes. Because we find that the bankruptcy court lacked jurisdiction to enjoin the strike, 29 U.S.C. § 101 *et seq.*, we reverse and vacate its injunctive order.

When it adopted the Norris-LaGuardia Act, Congress intended to curtail the power of courts to issue injunctions in any controversy growing out of a "labor dispute." *See Boys Markets v. Retail Clerks Union, Local 770*, 398 U.S. 235, 250–251, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970). The Norris-LaGuardia Act applies to all congressionally created courts, including bankruptcy courts. 29 U.S.C. § 113(d). Section 4 of the act, 29 U.S.C. § 104, explicitly withdraws jurisdiction to issue injunctions against strikes and related labor activities "in any case involving or growing out of a labor dispute." Plainly, the dispute between Crowe and the union is a "labor dispute" within the meaning of Norris-LaGuardia. Section 13(c) of the act, 29 U.S.C. § 113(c), defines "labor dispute" as:

> [A]ny controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.

Although the bankruptcy court seemed to agree that all payments into the employees' benefit funds are "terms or conditions of employment," it apparently held that there was no "controversy" because Crowe was refusing to pay its pre-petition debts solely because it was prohibited from doing so under the Bankruptcy Code. We believe that the bankruptcy court's holding is at odds with any commonly understood definition of "controversy." The union demanded that Crowe pay certain employee benefits, and Crowe refused to do so. This dispute is no less a "controversy" because one of the parties believes it is legally justified in refusing to pay. We see no reason to give a tortured reading to the words used in § 13(c) in order to avoid application of the Norris-LaGuardia Act in this case, especially since courts construing § 13(c) have uniformly given a broad reading to the term "labor dispute." *See, e.g., American Federation of Musicians v. Carroll*, 391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968). Thus, we conclude that the dispute between Crowe and the union is clearly a "labor dispute" within the meaning of the act.

The bankruptcy court reasoned that the Norris-LaGuardia Act has no application to this case because the union acted illegally by making "unlawful and unwarranted demands" on the employer. But we do not find anything in the Norris-LaGuardia Act indicating that Congress intended to preclude application of the act's anti-injunction provisions in cases in which a union is later found by some court to have acted illegally. Indeed, the history of the act suggests precisely the opposite. Prior to adoption of the act, the great majority of federal court anti-strike injunctions was based on a finding that the strike violated provisions of the antitrust laws. Section 5 of the Norris-LaGuardia Act, 29 U.S.C. § 105, specifically provides that federal courts have no jurisdiction to enjoin strikes found to be in violation of the antitrust laws. Thus, Congress could not have intended to preclude application of the act in cases in which the union was found to have acted illegally. In short, the fact that the union's demands upon Crowe may have run counter to provisions in the Bankruptcy Code does not render the Norris-LaGuardia Act inapplicable.

Crowe argues that when it incorporated the automatic stay provisions in the Bankruptcy Reform Act of 1978, 11 U.S.C. § 362(a)(6), Congress intended to supersede the anti-injunction provisions of the Norris-LaGuardia Act in all cases to which § 362(a)(6) is applicable.[1] The legislative history of the Bankruptcy Reform Act (and its predecessor H.R. 6) makes it clear that Congress never specifically addressed the question whether § 362(a)(6) would supersede the anti-injunction provisions of the Norris-LaGuardia Act. We are persuaded

---

1. 11 U.S.C. § 362(a)(6) provides an automatic stay of:

> [A]ny act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

that the second circuit's recent resolution of this issue in favor of the union's position is the correct statement of the law. *In re Petrusch*, 667 F.2d 297 (2d Cir. 1981).[2] *Petrusch* involved identical facts, except that the union used picketing rather than a strike in order to coerce payment of a prepetition debt. The court searched the entire legislative history compiled during the adoption of the Bankruptcy Reform Act of 1978 and was unable to find any reference in that history to the Norris-LaGuardia Act. We have made the same search and neither can we. The court concluded: "Such omissions are to us self-evident proof that Congress never intended to supersede or transcend it, since we cannot believe the Norris-LaGuardia Act was to be superseded, *sub silentio*." *Id.* at 300.

We agree with the second circuit's conclusion that § 362(a)(6) was not intended to supersede the well-established anti-injunction provisions of the Norris-LaGuardia Act. To eliminate a worker's right, individually or in combination, to withhold his/her labor is a devastating step. We simply cannot believe that if Congress had intended to alter its longstanding anti-injunction policy, it would have done so without notice and without hearings on the specific issue. The only legislative history we could find concerning § 362(a)(6) discusses the problem of unscrupulous creditors who engage in conduct designed to harass unwary debtors into paying consumer debts despite the filing of a bankruptcy petition. The legislative history makes it apparent that § 362(a)(6) was intended to prohibit such practices in consumer bankruptcies. We do not imply that Congress intended to restrict the application of § 362(a)(6) to consumer bankruptcies only, but rather, we are emphasizing that it never occurred to Congress that a conflict could arise between

§ 362(a)(6) and the Norris-LaGuardia Act. Proper statutory construction requires that the Norris-LaGuardia Act not be diluted except upon a clear intention expressed by Congress. We conclude only that Congress did not intend by adoption of § 362(a)(6) to make inapplicable, in whole or in part, the longstanding anti-injunction provision of Norris-LaGuardia.[3]

Crowe appears to argue that even if a literal reading of the Norris-LaGuardia Act requires a finding that the bankruptcy court was without jurisdiction to enjoin the strike, we should create an exception to the act to accommodate the conflicting interests protected by § 362(a)(6) and the Norris-LaGuardia Act. In *Boys Markets, supra*, the Supreme Court held that the Norris-LaGuardia Act does not bar injunctions against strikes over an arbitrable dispute when there exists between the parties a collective bargaining agreement that includes both an anti-strike provision and a mandatory arbitration clause. The court recognized that the literal language of the Norris-LaGuardia Act clearly mandated that no such injunctions be issued. However, the Court justified creation of a small exception to the act by noting that issuance of an injunction under the facts in *Boys Markets*, would not offend the core purpose of the act, and would further the congressionally mandated preference for settlement of disputes through arbitration rather than through strikes. Crowe argues that since Congress has established a policy that debtors who file bankruptcy petitions be protected from creditors, we should create another exception to the Norris-LaGuardia Act in order to further that policy.

■ However, we note initially that the Supreme Court made clear in *Buffalo Forge Co. v. United Steelworkers of America*, 428

2. In fairness to the bankruptcy court, we note that it did not have the benefit of the second circuit's opinion when it issued its injunctive order.

3. We recognize that § 362(a)(6) is couched in broad terms. It prohibits "any" act designed to collect a pre-petition debt. We also recognize that § 362(b) enumerates types of conduct that

are not subject to the automatic stay, and union activity is not included in the list. However, those observations merely suggest that the union's conduct in the instant case may well violate § 362(a)(6). They do not bear on the issue of whether a bankruptcy court has jurisdiction to enjoin strikes that violate § 362(a)(6).

U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), that the Norris-LaGuardia Act must still be enforced and that *Boys Markets* is limited to the factual context from which it arose. Moreover, we cannot discern any congressional policy that would justify creating a new exception to the Norris-La-Guardia Act. Although the Bankruptcy Reform Act of 1978 does provide considerable protection for debtors, we can find no indication that Congress intended to grant special privileges to such debtors in the area of labor relations. We cannot say that Congress intended to allow employers to vitiate the terms of negotiated collective bargaining agreements by the simple expedient of paying Chapter 11 filing fees. If the interests protected by § 362(a)(6) and the Norris-LaGuardia Act are in fact conflicting, it is for Congress to strike a balance, not the courts. Congress may very well decide that these interests do not conflict, or that, if they do, there are ways to accommodate these interests less drastic than creating an exception to the Norris-LaGuardia Act. For example, Congress may elect instead to grant the debtor a right of action for money damages for violations of the automatic stay.[4]

 Crowe assumes that it is at a disadvantage because it does not have the right to make the delinquent employee benefit fund payments on its own; that no payment can be made without the approval of the bankruptcy court. Since there are other creditors whose claims no doubt match the union's in terms of priority, it could very well be that the bankruptcy court will not permit Crowe to honor the union's claims. Thus, Crowe may find itself compelled to liquidate because of a strike concerning demands over which it has no control. But, there are many competing economic forces, over which it has no control, that can affect the outcome of Crowe's reorganization effort. Our labor laws recognize that one unfortunate but very possible result of permitting unions wide lati-

tude to engage in concerted activity may drive employers out of business. *Petrusch v. Teamsters Local 317*, 108 L.R.R.M. 2608, 2611–12 (1981). This, result, however, can occur in businesses not undergoing reorganization. It may very well be that by striking against Crowe, the union is acting against its own best interests. The result may be that if Crowe is forced to liquidate, the employee benefit fund will end up receiving nothing from the bankrupt estate. However, in light of the established anti-injunction provisions of the Norris-LaGuardia Act, we do not believe that a court should attempt to overturn a union's decision to go out on strike—regardless of the wisdom of that decision and regardless of the decision's effect on an employer's ability to continue operating.

Accordingly, the decision of the bankruptcy court is reversed, and the case is remanded for an entry of an order dissolving the permanent injunction.

IT IS SO ORDERED.

---

**4.** There is presently no right of action for money damages for violations of the automatic stay provisions of the Code. *See*, Kennedy, "Automatic Stays Under the New Bankruptcy Act," 12 Mich.J.L.Ref. 3, 22 (1978).