**In re TOM POWELL & SON, INC., Debtor.**

**Bankruptcy No. 82–01519–S–11.**

United States Bankruptcy Court, W. D. Missouri, S. D.

Aug. 20, 1982.

---

John G. Newberry, Springfield, Mo., for debtor.

James I. Singer, St. Louis, Mo., for Local 36.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

Debtor, Tom Powell & Son, Inc., hereinafter Powell, is a Missouri corporation which, since 1964, has been engaged in heating, ventilating, air conditioning contracting and sheet metal contracting. Powell employs seven members of the Sheet Metal Workers International Association, Local 36, hereinafter Local 36, and requires their services in the operation of his business. The parties are before this Court in response to a Show Cause Order issued on June 4, 1982 ordering the Union to show cause why it should not be held in contempt by reason of a strike called after Powell had filed bankruptcy and the stay pursuant to 11 U.S.C. § 362 was in effect.

Since 1970, Powell and the Union have been parties to a collective bargaining agreement which provides in Article 1, § 10 that payments for the Fringe Benefits and Contractor's Contributions

> " . . . shall be due on the 10th day of each month for the previous month and shall be delinquent by the 20th day of the month.

> "If on the 20th day of the said following month, the Employer has failed to pay contributions as stipulated, then on the first working day following the 20th day he shall suffer a work stoppage on jobs and/or in shops. This work stoppage will continue until all contributions due have been paid . . . "

Debtor failed to make his payments in March and April of 1982. On May 21, 1982 Harold Tindall, the Union's business representative in Springfield, sent a certified letter to Tom Powell, president of the Debtor, informing him that a work stoppage would be called if the payments were not made by

May 24, 1982. Debtor received this letter on May 22, 1982.

Debtor talked to Tindall's wife, who is also his secretary, on May 24, 1982 requesting permission to remit the March payment only in order to avoid the strike. Mrs. Tindall discussed it with Mr. Tindall and then called Powell's secretary and advised her that the Union would not accept a partial payment.

The next day, May 25, 1982, Powell tendered to Mrs. Tindall at his office a check for the full amount of the delinquent fringes. Due to insufficient funds, the bank refused to honor the check. Thus, on May 26, 1982 the Union went out on strike and remained out through May 27, 1982 when the fringes were paid in full. The striking laborers returned to work on May 28, 1982.

Powell had filed its bankruptcy petition on May 19, 1982, bringing into effect the automatic stay of 11 U.S.C. § 362(a)(6) of the Code which enjoins "any act to collect ... or recover a claim against the debtor that arose before the commencement of the case under this title." The strike was an act to collect a pre-petition debt. The question is whether the automatic stay prevails over the anti-injunction policy of the Norris-LaGuardia Act, §§ 101ff, Title 29, U.S.C.

The Act provides in § 101 that "(N)o court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute ...". "Labor dispute" is defined in § 113(c) as "any controversy concerning terms or conditions of employment ..."

The Act was created to provide protection for the organized laborer. As enumerated in § 102 of the Act, the public policy section, it was recognized that:

"(i)t is necessary that he have full freedom of association, self organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

The Supreme Court has found that the Act

"emphasized the public importance under modern economic conditions of protecting the rights of employees to organize into unions and to engage in 'concerted activities for the purpose of collective bargaining or other mutual aid or protection.'" *Allen Bradley Co. v. Local Union No. 3,* 325 U.S. 797, 805, 65 S.Ct. 1533, 1538, 89 L.Ed. 1939 (1945).

See also *Brotherhood of Rail. Trainmen v. Chi. River & Ind. R.R. Co.,* 353 U.S. 30, 40, 77 S.Ct. 635, 640, 1 L.Ed.2d 622 (1957); *Marine Cooks & Stewards v. Panama Steamship Co., Ltd.,* 362 U.S. 365, 369, 80 S.Ct. 779, 783, 4 L.Ed.2d 797 (1960).

Congress enacted the Act to "prevent the injunction ... from upsetting the natural interplay of the competing economic forces of labor and capital." *Brotherhood of Rail. Trainmen,* 353 U.S. supra, at 40, 77 S.Ct. at 640, and "to withdraw federal courts from a type of controversy for which many believed they were ill-suited ...", *Marine Cooks & Stewards,* 362 U.S. supra, at 369 n.7, 80 S.Ct. at 783 n.7. See *Texas Intern. Airlines, Inc. v. Airline Pilots Ass'n,* 518 F.Supp. 203, 217 (D.C.S.D.Tex. 1981); *New Orleans S.S. Ass'n v. General Longshore Wkrs.,* 626 F.2d 455, 464 (5th Cir. 1980); *Texas & N.O.R. Co. v. Brotherhood of Railroad Trainmen,* 307 F.2d 151, 155–56 (5th Cir. 1962); *Chicago River and Indiana R. Co. v. Brotherhood of Rail. T.,* 229 F.2d 926, 932 (7th Cir. 1956).

In a case involving similar facts as the case at bar, the Court of Appeals for the Second Circuit found that § 362 of Title 11 does not supersede the Norris-LaGuardia Act. *In re Petrusch,* 667 F.2d 297 (2nd Cir. 1981), involved picketing by the Teamsters' Union in an attempt to collect fringe benefit payments from Petrusch. Petrusch argued that there was no labor dispute between himself and the union and requested

a restraining order against the union's picketing. The court, after noting that it had struck down a similar injunction in a Chapter X proceeding thirty years earlier, found that payments of fringe benefits are "... part of the terms and conditions of employment", and, as such, fit "... squarely into the Norris-LaGuardia Act's definition of a labor dispute ..." *Id.* at 299. The court discussed the legislative history of the Bankruptcy Reform Act of 1978 and found that

"(n)owhere ... is any reference made to the Norris-LaGuardia Act. Such omissions are to us self-evident proof that Congress never intended to supersede or transcend it, since we cannot believe the Norris-LaGuardia Act was to be superseded, sub silentio." *Id.* at 299–300.

The reasoning of *In re Petrusch* was followed in *Crowe & Associates, Inc. v. Bricklayers and Masons Union Local No. 2 of Detroit, Michigan*, 20 B.R. 225 (Bkrtcy.E.D. Mich.1982). Crowe was delinquent in making payments to various employee benefit funds and failed to make them upon demand by the union. The Bankruptcy Court enjoined the subsequent strike as a violation of the automatic stay provisions of Section 362. The Court found no bar in the Norris-LaGuardia Act because it found the strike to be illegal and the dispute not one involving labor.

The District Court reversed, finding first, that the "Norris-LaGuardia Act applies to all congressionally-created courts, including bankruptcy courts." *Id.* at 227. Next, it found that there was a labor dispute as defined in 29 U.S.C. § 113(c) in that there existed a controversy over the payment of employee benefits. Finally, following the lead of *In re Petrusch*, the Crowe court examined the legislative history of the Bankruptcy Reform Act of 1978, found no mention of the Norris-LaGuardia Act and concluded that ... "Congress did not intend by adoption of § 362(a)(6) to make inapplicable ... the longstanding anti-injunction provision of Norris-LaGuardia." 20 B.R. at 228. The court stated that, "... in light of the established anti-injunction

provisions of the Norris-LaGuardia Act, we do not believe that a court should attempt to overturn a union's decision to go out on strike." *Id.* at 229.

■ Both *In re Petrusch* and *Crowe* are distinguishable from the case at bar on the narrow ground that court-ordered injunctions were issued in both, whereas here the question is the impact of a stay mandated by statute and effective upon filing even if the court does nothing. Other distinctions exist. While it is true that this is a labor dispute within the broad definition contained in the Norris-LaGuardia Act, it is also true that the strike was an "act to collect ... a claim against the debtor that arose before the commencement of the case under this title." Further, the strike was intended to enforce rights growing out of express provisions of the collective bargaining agreement rather than to vindicate rights contained in the Act.

Section 362(b) of the Code provides for exceptions to the automatic stay in situations where Congress balanced the policy underlying the stay against the continuation of certain kinds of procedures, such as a criminal prosecution. Few of those exceptions permit an action for the recovery of a pre-petition debt. None mention Norris-LaGuardia. It may well be that Congress simply did not consider the relationship between the two statutes. Cf. *Texas & N.O.R. Co.*, supra at 157. Where the activity is intended to collect a debt arising out of contract as opposed to an effort to vindicate statutory rights, outright abdication of jurisdiction seems inappropriate. There should be a balancing of the policy considerations underlying the prohibitions against self-help and preferences contained in the Code against the anti-injunction provisions of the Norris-LaGuardia Act.

Under the facts of this case, the question of balancing need not be resolved. Debtor's witness said that he told Mrs. Tindall on May 24, 1982 that there was a possibility that a Chapter 11 bankruptcy was being filed on his behalf. Actually the petition had been filed already but Debtor was not aware of that. Mrs. Tindall did not recall

that part of the conversation but admitted to hearing rumors of an impending bankruptcy. She apparently did not inform her husband of the rumors. There is no evidence that either of them had actual notice of the filing or of the stay.

A knowing and willful violation of a specific court order is required before a party can be found in contempt. *Fidelity Mortg. Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2nd Cir. 1976); *In re Abt,* 2 B.R. 323 (Bkrtcy.E.D.Pa.1980); *In re Mealey,* 16 B.R. 800 (Bkrtcy.E.D.Pa.1982); *In re Parr,* 13 B.R. 1010 (Bkrtcy.E.D.N.Y.1981). The automatic stay provisions of the Code have been found to be "specific and definite" orders of the court. *In re Norton,* 15 B.R. 623 (Bkrtcy.E.D.Pa.1981). Formal notice is not required so long as the party in violation had obtained knowledge of the order through some source. *In re Eisenberg,* 7 B.R. 683 (Bkrtcy.E.D.N.Y.1980); *Matter of Pal Transport, Inc.,* 13 B.R. 935 (Bkrtcy.M.D.Fla.1981); *In re Wariner,* 16 B.R. 216 (Bkrtcy N.D.Tex.1981); *In re Reed,* 11 B.R. 258 (Bkrtcy. Utah 1981).

The Court finds that Local 36 and its officers and employees had no actual knowledge of the bankruptcy having been filed. There was, therefore, no knowing or willful violation of the automatic stay. The Order to Show Cause is DISMISSED.

This Order constitutes Findings of Fact and Conclusions of Law as required by Rule 752, Rules of Bankruptcy Procedure.