PER CURIAM.
The question presented by this appeal is whether the district court properly dissolved the bankruptcy court’s permanent injunction against appellee Bricklayers and Masons Union’s strike to collect pre-petition pension payments. The bankruptcy court 16 B.R. 271, had held the strike violated § 362(a)(6) of the Bankruptcy Reform Act of 1978. We affirm the district court’s 20 B.R. 225, dissolution of the bankruptcy court’s permanent injunction.
Plaintiff-appellant, Crowe & Associates, Inc. (Crowe) is a subcontractor on a construction project in Detroit, Michigan. Defendant-appellee, Bricklayers and Masons Union Local No. 2 of Detroit, Michigan (Union) is a union whose membership includes bricklayers employed by Crowe. On September 23,1981, Crowe filed a voluntary Chapter 11 petition for relief under the reorganization provisions of the Bankruptcy Reform Act of 1978. Before filing this petition, Crowe was delinquent in its payments to various union employee benefit funds. The collective bargaining agreement between Crowe and the Union required payment of these funds. That *213 agreement specifically provided that the Union could strike if Crowe failed to make the required payments. On the date it filed its Chapter 11 petition, Crowe owed the Union more than $36,000. The Union demanded immediate payment of the amount. Crowe did not make the payments. The Union ordered its members to leave the job site. Crowe filed a complaint in the bankruptcy court seeking to enjoin the strike.
Without a hearing, the bankruptcy court issued a permanent injunction against the strike, holding that the strike violated the the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a)(6). The bankruptcy court reasoned that the NorrisLaGuardia Act did not bar the issuance of an injunction because (1) the dispute between Crowe and the Union was not a labor dispute within the meaning of the NorrisLaGuardia Act, 29 U.S.C. § 113(c); and (2) the Norris-LaGuardia Act bars injunctions against legal strikes not illegal ones. The Union then appealed to the district court. Judge DeMascio reversed, finding that the bankruptcy court lacked jurisdiction to enjoin the strike. Crowe now appeals from the decision of the district court. The Union’s threat to strike continues so the issue is not moot.
On appeal, appellant argues that the bankruptcy court, in this case, had jurisdiction to issue a permanent injunction against appellee’s strike because that strike did not arise from a “labor dispute.” Section 4 of the Norris-LaGuardia Act explicitly withdraws jurisdiction from all courts of the United States which includes bankruptcy courts, to issue injunctions against strikes “in any case involving or growing out of a labor dispute.” 29 U.S.C. § 104. The initial question on appeal, therefore, is whether the dispute between Crowe and the Union is a “labor dispute” within the meaning of Norris-LaGuardia.
Section 13(c) of the Act defines “labor dispute” as:
[a]ny controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.
29 U.S.C. § 113(c). In issuing the injunction, the bankruptcy court opined that Crowe’s payments into the employee benefit fund are “terms or conditions of employment,” but held that no “controversy” existed as Crowe refused to pay its pre-petition debts only because the Bankruptcy Code would prohibit such payments. The district court reversed, holding that the relationship between Crowe and the • Union amounted to a “controversy” within the scope of the Norris-LaGuardia Act.
On the issue of whether a labor dispute exists, we find that the district court properly reversed the bankruptcy court. In In re Petrusch, 667 F.2d 297 (2d Cir.1981), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1981), the Second Circuit squarely addressed this issue and decided that employee pension fund benefits constituted “the terms and conditions of employment” within the meaning of the Norris-LaGuardia Act. In Petrusch, the debtor in a Chapter 13 proceeding appealed an order staying the bankruptcy court’s injunction of labor union picketing. The union picketed when the debtor failed to make fringe benefit payments to the union’s health, hospital, pension and retirement funds, pursuant to its collective bargaining agreement. The Second Circuit found that because the debt- or was obligated by the terms of its collective bargaining agreement to make these payments, such payments were part of the “terms and conditions of employment.” The Union’s concern with these “terms and conditions of employment,” therefore, gave rise to a “labor dispute” within the NorrisLaGuardia Act.
Like the debtor in Petrusch, Crowe failed to make payments to the employee pension fund. Those payments are a “term” of the collective bargaining agreement between Crowe and the Union. The collective bargaining agreement embodies “terms and conditions of employment.” The strike controversy arising from those terms of employment, therefore, is a “labor dispute” within the broad purposes of the Norris-LaGuardia Act, 29 U.S.C. § 113(c). In Jacksonville Bulk Terminals v. ILA, 457 U.S. 702, 712, 102 S.Ct. 2673, 2681, 73 L.Ed.2d 327, 337 (1982), the Supreme Court stated that “The term labor dispute should be most broadly and liberally construed. The term ‘labor dispute’ comprehends disputes growing out of labor relations ... All such disputes seem to be clearly includ *214 ed.” Citing Marine Cooks & Stewards v. Panama Steamship Co., 362 U.S. 365, 369, 80 S.Ct. 779, 783, 4 L.Ed.2d 797 (1960). Accord Associated General Contractors of Illinois v. Illinois Conference of Teamsters, 454 F.2d 1324, 1327 (7th Cir.1972); United Steel Workers of America v. Bishop, 598 F.2d 408 (5th Cir.1979). In view of the specific holding in Petrusch and the broad purposes of the Norris-LaGuardia Act’s anti-injunction provisions, the district court properly held that the controversy between Crowe and the Union is a “labor dispute.”
Crowe argues that even if we find that the controversy between Crowe and the Union is a “labor dispute,” the bankruptcy court properly enjoined this particular strike because the Union’s activity is illegal and because the provisions of the Bankruptcy Code preclude Crowe from meeting the obligations of its collective bargaining agreement.
Section 362(a)(6) of the Bankruptcy Reform Act prohibits any “act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.” The Union’s strike in this case is such an “act” designed to collect a pre-commencement debt. Union activity is not among the exceptions to the automatic stay provision enumerated in § 362(b). The Union’s strike, therefore, is arguably an act violative of § 362(a)(6) of the Bankruptcy Reform Act. The Supreme Court has held, however, that the “Norris-LaGuardia Act’s ban on federal injunctions is not lifted because the conduct of the Union is unlawful under some other nonlabor statute.” Telegraphers v. Chicago & N.W.R. Co., 362 U.S. 330, 80 S.Ct. 761, 4 L.Ed.2d 774 (1960); citing, Brotherhood of Railroad Trainmen v. Chicago River, 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). As the district court concluded, the entire history of the Act suggests that activities must not be enjoined merely because they violate the antitrust laws. In Telegraphers, the Supreme Court warned that a holding “that mere unlawfulness under any law is enough to remove the strictures of the Norris-LaGuardia Act would require a modification or abandonment” of the declared congressional purpose and “would run counter to the mandate of the Act.” 362 U.S. at 339, 80 S.Ct. at 766. Citing, Milkwagon Drivers Union v. Lake Valley Farm Products, 311 U.S. 91, 100-03, 61 S.Ct. 122, 126-28, 85 L.Ed. 63 (1940).
Section 107(a) of that Act does allow injunctive relief where “unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained.” Crowe relies on the case of Scott v. Moore, 680 F.2d 979 (5th Cir.1982), cert. granted, - U.S. -, 103 S.Ct. 442, 74 L.Ed.2d 599 for the proposition that the bankruptcy court properly enjoined the Union’s “unlawful” strike activity. Scott, however, only went so far as to enunciate the well-settled principle that the “anti-injunction provisions of the Norris-LaGuardia Act do not deprive the district court of jurisdiction to enjoin violence.” 680 F.2d at 1004. There is no evidence that the Union in the case at bar engaged in violence. The Union’s nonviolent strike activity cannot be enjoined merely because it is violative of the Bankruptcy Reform Act. We are unwilling to modify or abandon the declared congressional purpose of the anti-injunction provisions of the Norris-LaGuardia Act. Telegraphers, 362 U.S. at 339, 80 S.Ct. at 766.
Neither are we willing to find that the Bankruptcy Reform Act supersedes or provides an exception to those anti-injunction provisions. Crowe argues that the bankruptcy court has such jurisdiction to issue an injunction because Congress intended that the automatic stay provisions in the Bankruptcy Reform Act of 1978 would supersede the anti-injunction provisions of the Norris-LaGuardia Act. This Court must look to the legislative history of the Bankruptcy Reform Act to determine congressional intent. The purpose of the automatic stay is stated in the House Report for the Bankruptcy Reform Act, H.R.Rep. 95-595, 95th Cong., 2d Sess., 340, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6295, 6297:
The automatic stay is one of the fundamental debtor protections provided by the *215 bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor’s property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors....
The Bankruptcy Reform Act’s legislative history does not mention the Norris-LaGuardia Act. (Report of the Committee on the Judiciary, H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 1977; Notes of Committee on the Judiciary, Sen.Rep. No. 989, 95th Cong., 2d Sess., U.S.Code Cong. & Admin. News 1978, p. 5787.) Accord Petrusch, 667 F.2d at 299-300. The Petrusch court concluded that this silence was “self-evident proof that Congress never intended to supersede or transcend [Norris-LaGuardia], since we cannot believe that the Norris-LaGuardia Act was to be superseded sub silentio.” 667 F.2d at 300.
We find the reasoning of Petrusch persuasive. Congress would not have silently decided to alter its anti-injunction policy. As the district court concluded, “it never occurred to Congress that a conflict could arise between § 362(a)(6) and the NorrisLaGuardia Act.” Congress’ mere adoption of § 362(a)(6) in 1978, therefore, does not provide sufficient evidence of a congressional intent to supersede the anti-injunction provisions.
Crowe argues that even if § 362 (a)(6) does not supersede the anti-injunction provisions, this Court should carve out a specific exception for acts prohibited by that section. In Boys Markets, Inc. v. Retail Clerks, Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court held:
That the unavailability of equitable relief in the arbitration context presents a serious impediment to the congressional policy of favoring the voluntary establishment of a mechanism for the peaceful resolution of labor disputes, that the core purpose of the Norris-LaGuardia Act is not sacrificed by the limited use of equitable remedies to further this important policy, and consequently that the NorrisLaGuardia Act does not bar the granting of injunctive relief in the circumstances of the instant case.
Boys Markets carves out a narrow exception to the anti-injunction provisions of Norris-LaGuardia for the situation in which a collective bargaining contract contains a mandatory grievance adjustment or arbitration procedure. Crowe contends that because the anti-injunction provisions of the Norris-LaGuardia Act are an impediment to the congressional policy of protecting bankrupt debtors from their creditors and because the injunction in this case does not sacrifice the core purpose of the Act, the Court should create another narrow exception for this case. As the Boys Market Court emphasized, however, the exception carved out in that case was confined to injunctions against strikes over arbitrable disputes, when an anti-strike provision and a mandatory arbitration clause exist in the parties’ collective bargaining agreement. The Supreme Court, in Jacksonville, - U.S.-, 102 S.Ct. at 2678, reinforced the narrowness of Boys Markets and upheld the vitality of the anti-injunction provisions of the Norris-LaGuardia Act:
This court has consistently given the anti-injunction provisions of the Norris-LaGuardia Act a broad interpretation, recognizing exceptions only in limited situations where necessary to accommodate the Act to specific federal legislation or paramount congressional policy.
Furthermore, this Circuit in Plain Dealer Publishing Co. v. Cleveland Type. Union No. 53, 520 F.2d 1220 (6th Cir.1975) established that the:
employer seeking an injunction has the burden of proving that he comes within the Boys Market doctrine. He must provide the Court with an evidentiary basis *216 for making the findings required by that case requisite to the issuance of an injunction.
In order to meet its burden, Crowe must demonstrate that the “unions are in fact engaged in an unlawful work stoppage, that such work stoppage is over a grievance that the parties are contractually bound to arbitrate, and that the collective bargaining agreements contain no-strike clauses, express or implied, which afford a basis for an injunctive order.” Plain Dealer, 520 F.2d at 1228. Crowe has not met the burden of the Boys Markets doctrine. Thus, we are unable to find that the Norris-LaGuardia Act permits injunctions of the Union’s strike activity, that the Bankruptcy Reform Act of 1978 supersedes Norris-LaGuardia’s anti-injunction provisions, or that a Boys Markets exception to those provisions is appropriate.
We recognize that this legal result casts upon Crowe inequities. Even if Crowe desired to make the delinquent payments, the bankruptcy court may not permit it to do so. Crowe might have to liquidate because of a strike concerning demands over which it has no control. But Crowe has no control over many economic forces which affect the outcome of its reorganization. Moreover, the strike is a legitimate weapon, designed to strip the employer of economic control. The labor laws recognize that a strike may drive an employer out of business. See, e.g., Petrusch, 667 F.2d at 297. The anti-injunction provisions of the Norris-LaGuardia Act were intended to protect workers in the exercise of organized economic power. In Chicago River, 353 U.S. at 39, 77 S.Ct. at 640, the Supreme Court stated that, in enacting Norris-LaGuardia:
Congress acted to prevent injunctions of the federal courts from upsetting the natural interplay of the competing economic forces of labor and capital.
Mindful of this congressional policy and of the case law in this area, we hold that the district court properly dissolved the bankruptcy court’s injunction against the Union’s strike activity.
Accordingly, the judgment of the district court is AFFIRMED.