In re The Matter of Wayne Lee
DeLAY, Bankrupt.

James A. UNDERWOOD, and T & J
Distributors, Inc., Appellants,

v.

Wayne Lee DeLAY, Appellee.

No. 83–4254–CV–C–5.

United States District Court,
W.D. Missouri, C.D.

June 18, 1984.

John S. Pletz, Jefferson City, Mo., for appellants.

Walter W. Nowotny, Jr., Clayton, Mo., for appellee.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

This is an appeal from the Bankruptcy Court's decision holding Appellant Underwood in contempt of Court. Pursuant to its findings that Underwood twice violated the automatic stay provision, 11 U.S.C. § 362(a), and once violated the injunctive provisions of the discharge order, 11 U.S.C. § 524(a), the Bankruptcy Court ordered Underwood to pay a fine of $250.00 for each violation, resulting in total fine of $750.00. In addition, the court ordered Underwood to pay Appellee DeLay $1,000.00 as "compensatory damages" and an additional $1,000.00 for attorney's fees. Finally, the court ordered Underwood to pay the costs in the proceeding in the amount of $306.00. *See In re DeLay*, 25 B.R. 898 (Bankr.W.D.Mo.1982).

Underwood asserts that the Bankruptcy Court erred in each of its contempt findings. Underwood also contends that the monetary penalties imposed by the Bankruptcy Court, particularly the $2,000.00 payable directly to Appellee DeLay, are excessive and unwarranted. In response, DeLay agrees with the Bankruptcy Court that Underwood violated the automatic stay and discharge provisions by instituting criminal proceedings against DeLay, and argues that the contempt citations and sanctions ordered below should be upheld.

This case is deemed to have been referred from this Court to the Bankruptcy Judge pursuant to an order entered by the United States District Court for the Western District of Missouri, adopting an Emergency Resolution to provide for the administration of the bankruptcy system. The resolution provides that

[i]n conducting review, the district judge may hold a hearing and may receive such evidence as he deems appropriate and may accept, reject, or modify, in whole or in part, the order of judgment of the bankruptcy judge, and need give no deference to the findings of the bankruptcy judge. At the conclusion of the review, the district judge shall enter an appropriate order of judgment.

Emergency Resolution (c)(5)(B). Since the present matter was not decided by the Bankruptcy Court until December 27, 1982, the decision below was rendered subject to the emergency rule. *See* Emergency Resolution (d).

## I. *Background*

The debtor, Wayne DeLay, filed a voluntary joint Chapter 7 petition on August 17, 1981. One of the scheduled general creditors was T & J Distributors, Inc. (hereinafter referred to as "T & J"), a business located in California, Missouri. Appellant Underwood is the president of T & J.

DeLay and T & J had a longstanding business relationship. DeLay was an independent travelling salesman; T & J was one of his suppliers. DeLay would obtain various items of merchandise which had already been ordered by customers or to restock the supply in his van. He would sign a receipt for the merchandise, load it into his van, and proceed along his sales route. At the end of each week he would

fill out a report listing all of the T & J merchandise he had sold and pay T & J for the merchandise after deducting his commission.

DeLay testified that it was his practice to record a sale on a T & J invoice if the sale was of T & J merchandise. He similarly used the invoices of other distributors if he sold their merchandise. He sometimes used his own invoice if the sale involved his own merchandise. DeLay also testified that at least some of his customers did not like Mr. Underwood and would not knowingly purchase T & J merchandise. In those cases, DeLay testified, he would record the transaction on his own invoice.

In May of 1981, DeLay obtained some welding rods from T & J in the usual manner. The welding rods were sold to the MFA store in Tipton, Missouri. DeLay testified that the store manager was one of his customers who refused to deal with Underwood directly, so he billed MFA on his own invoice and received a check for $336.15 payable to himself. He subsequently deposited the check into his own bank account.

Shortly thereafter, DeLay and Underwood had a falling out and ended their business relationship. DeLay returned all unsold T & J merchandise from his storage garage and van. DeLay filled out a final sales report which did not include the money he had been paid by the MFA store. DeLay testified that he kept the money to offset a debt owed to him by Underwood.

On August 17, 1981, DeLay and his wife filed a voluntary joint Chapter 7 bankruptcy petition. T & J was scheduled as a general creditor. On August 24, 1981, the Clerk of the Bankruptcy Court mailed a notice of the § 341 meeting of creditors to T & J. The notice included notice of the automatic stay. On August 25, Underwood's attorney, Mr. Kay, sent a collection letter to DeLay. Although this letter was technically a violation of the automatic stay, the Bankruptcy Court did not hold Underwood in contempt on the basis of the letter.

The Bankruptcy Court did find Appellant in contempt, however, on the basis of a conversation between Underwood and DeLay on September 25, 1981. This conversation occurred just prior to the § 341 meeting of creditors. DeLay testified that he was standing outside the room where the meeting of creditors was to take place when Underwood confronted him. DeLay and his attorney at that time, Mr. Pletz, both testified that Underwood was quite belligerent and demanded payment of his claim. Mr. Pletz further testified that, when DeLay said that any debt was subject to the bankruptcy process, Underwood threatened to bring criminal charges against DeLay.

Underwood testified that he felt like his old friend, DeLay, had in effect "spit on [him]" by using the bankruptcy system to avoid payment of the debt. Approximately one week later, on September 30, 1981, Underwood filed a complaint with the Sheriff of Moniteau County, Missouri. Underwood accused DeLay of criminal conversion in connection with the debtor's retention of funds from the welding rod sale. It was brought out at trial that Underwood's attorney with respect to the bankruptcy proceeding was also the prosecuting attorney at Moniteau County. The Bankruptcy Court found that Underwood's filing of the criminal complaint on September 30 was in violation of the automatic stay and held Underwood in contempt on that basis.

A warrant for DeLay's arrest was issued one month after the filing of the complaint. DeLay was arrested on December 11, 1981 in Jefferson City, Missouri, where he was attending his discharge hearing before the Bankruptcy Court. Underwood accompanied the deputy sheriff of Cole County, Missouri, for the purpose of identifying DeLay. Although Underwood testified that he had written off DeLay's debt after the September 25 meeting of creditors and had not sought to use the criminal process to obtain satisfaction of his claim, the Bankruptcy Court made its third finding of contempt on the basis of Underwood's participation in the arrest.

DeLay spent four or five hours in the Jefferson City jail before being released on a $500 bond. Since that time, DeLay has been required to make several appearances in Moniteau County in connection with the pending criminal charges. His attorney eventually moved for a change of venue to Miller County, Missouri, in light of the Moniteau County prosecutor's obvious conflict of interest. DeLay was subsequently bound over for trial on a charge of stealing. The final outcome of this prosecution does not appear in the record.

After making its three contempt findings, the Bankruptcy Court ordered Underwood to pay a fine of $250.00 for each violation, resulting in a total fine of $750.00. In addition, the court ordered Underwood to pay DeLay $1,000.00 as compensatory damages for personal expenses and loss of work occasioned by this proceeding, as well as the criminal prosecution initiated by Underwood. The court also ordered Underwood to pay DeLay $1,000.00 for attorney's fees incurred in defending the criminal proceeding and pursuing the contempt sanctions. Finally, costs in the amount of $306.00 were assessed against Underwood.

## II. *Discussion*

After a careful review of the transcript, opinion of the Bankruptcy Court, and briefs of the parties, this Court concludes that Appellant Underwood should be held in contempt only for his attempt to obtain payment of his claim on September 25, 1981. The two remaining contempt findings will be set aside, however, because there is insubstantial evidence in the record that Appellant's initiation of criminal proceedings against Appellee was designed to compel payment of the debt.

### A. *The First Contempt Finding*

█ Once the debtor files a petition with the Clerk of the Court, the Bankruptcy Act of 1978 broadly prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). In the instant case, the evidence is clear and persuasive that Appellant attempted to recover his claim against the debtor just prior to the § 341 meeting of creditors on September 25, 1981. Appellant made no effort to seek relief from the automatic stay prior to taking such action. *Cf.* 11 U.S.C. § 362(d). The Court further finds that Appellant had received notice of the commencement of the bankruptcy proceeding and the automatic stay, and had consulted with an attorney concerning the status of his claim. Under these circumstances, the Court has no difficulty upholding the Bankruptcy Court's contempt citation against Appellant for his actions on September 25, 1981. *See In re Carter,* 691 F.2d 390 (8th Cir.1982).

### B. *The Second and Third Contempt Findings*

The Bankruptcy Court also found that Appellant had violated the automatic stay and discharge injunction by initiating and participating in a criminal prosecution of the debtor. This Court disagrees. The Bankruptcy Act of 1978 specifically exempts from the automatic stay "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1).

█ A criminal prosecution of the debtor may be in violation of the automatic stay if it is part of an "aggressive campaign" to collect a debt. *See, e.g., In re Ohio Waste Services, Inc.,* 23 B.R. 59, 60 (Bankr.S.D.Ohio 1982). Here, however, the weight of the evidence indicates that Appellant did not initiate the prosecution in order to compel payment of his claim. Instead, Appellant had written off the debt before he filed his complaint against the debtor. Although Appellant may have taken this action in retaliation against the debtor's efforts to seek the protection of the bankruptcy laws, the evidence strongly suggests that Appellant was seeking to "get even" only in an emotional sense, not in a monetary sense. Consequently, this Court concludes that Appellant's filing of a criminal complaint against the debtor was not

an act to collect a pre-petition claim within the meaning of § 362(a).

█ Similarly, Appellant's actions on December 11, 1981 did not constitute an attempt to recover a debt from the debtor within the meaning of § 524(a)(2). The testimony at trial indicated that Appellant accompanied the deputy sheriff of Cole County that day for the primary purpose of identifying the debtor. While Appellant might have received some emotional satisfaction from seeing the debtor being arrested, there is no proof that Appellant's actions were calculated to compel payment of the discharged debt. Accordingly, this Court holds that Appellant did not violate the injunction provision of the discharge order by his actions on December 11, 1981.

The contrary conclusion of the Bankruptcy Judge apparently resulted from his misplaced emphasis on two factors. First, the Court below found it highly suspicious that the attorney who had represented Appellant with respect to the bankruptcy proceeding was also the prosecuting attorney in the criminal action against the debtor. *See In re DeLay,* 25 B.R. at 902–03. Second, the court stressed that, as a matter of Missouri criminal law, the prosecution of the debtor was frivolous and malicious. *Id.* at 903–05. Regardless of the accuracy of the Bankruptcy Judge's observations, however, these factors are at best tangentially relevant to the *central issue of whether Appellant's actions were designed to collect a claim from the debtor.*

█ In passing, this Court notes that the debtor may well have substantial state and federal claims against Appellant and Appellant's attorney in a separate civil action. *See* 42 U.S.C. §§ 1983, 1985(2) [clause 1]; *see also Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *White v. Bloom,* 621 F.2d 276, 280 (8th Cir.), *cert. denied,* 449 U.S. 995, 101 S.Ct. 533, 66 L.Ed.2d 292 (1980); *Rankin v. Howard,* 633 F.2d 844, 847–49 (9th Cir.1980), *cert. denied,* 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 (1981); *Hoopes v. Nacrelli,* 512 F.Supp. 363, 368 (E.D.Pa.1981). Insofar as a court sitting in bankruptcy is con-

cerned, however, the maintenance of a criminal prosecution violates the letter and spirit of the bankruptcy laws only if its principal purpose is to collect a dischargeable debt. *Johnson v. Lindsey,* 16 B.R. 211 (Bankr.M.D.Fla.1981). Absent proof of such a purpose, § 362(b)(1) unambiguously permits the "commencement or continuation of a criminal action or proceeding against the debtor." Here, there is insubstantial evidence to find that Appellant used the criminal process to force the debtor to make restitution; a conclusion to the contrary can only be based on speculation. Accordingly, the Bankruptcy Court's findings of contempt in connection with Appellant's actions on September 30 and December 11 will be set aside.

## C. *Sanctions*

The Court agrees with the Bankruptcy Judge's imposition of a $250.00 fine against Appellant on the basis of the first contempt finding. However, in accordance with the Court's foregoing conclusion, the two $250.00 fines assessed against Appellant in connection with the second and third contempt finding will be set aside.

█ In addition, the $1,000.00 in compensatory damages awarded the debtor will be set aside. The Court notes that the law is unsettled as to whether violations of the automatic stay and discharge order give rise to a private right of action for the recovery of damages. *Compare In re DePoy,* 29 B.R. 471, 480–81 (Bankr.N.D.Ind. 1983) (recognizing private right of action); *In re Lowry,* 25 B.R. 52, 56–57 (Bankr.E.D. Mo.1982); *In re Batla,* 12 B.R. 397, 400–01 (Bankr.N.D.Ga.1981); *In re Brooks,* 12 B.R. 283, 285 (Bankr.W.D.Mo.1981), *with In re Stacy,* 21 B.R. 49, 51–53 (Bankr.W.D. Va.1982) (no private right of action); *Crowe & Associates, Inc. v. Bricklayers & Masons Union Local No. 2,* 20 B.R. 225, 229 n. 4 (E.D.Mich.1982), *aff'd,* 713 F.2d 211 (6th Cir.1983). In any event, the Court concludes that under the facts of this case an award of compensatory damages would be inappropriate. The debtor's damages

occasioned by Appellant's conduct in the September 25 incident are minimal. Appellant never succeeded at recovering the debt from the debtor. Moreover, it appears from the record that the great bulk of the damages sustained by the debtor were the result of the criminal prosecution. As noted above, Appellant's initiation and participation in this prosecution did not violate the automatic stay nor the discharge order. Therefore, the award of $1,000.00 in compensatory damages will be set aside.

■ Finally, this Court's decision in this case requires a recalculation of the amount of attorney's fees to which the debtor is entitled. Numerous courts have held that the debtor may be awarded attorney's fees incurred in bringing a violation of the automatic stay to the attention of Bankruptcy Court. *See, e.g., In re Zartun*, 30 B.R. 543, 546 (Bankr. 9th Cir.1983); *In re Carter*, 16 B.R. 481, 484 n. 3 (W.D.Mo.1981), *aff'd*, 691 F.2d 390 (8th Cir.1982). This Court is inclined to agree that an award of attorney's fees is appropriate where, as here, a creditor violates the automatic stay without substantial justification. *Cf. In re Wilson*, 19 B.R. 45, 47–48 (Bankr.E.D.Pa. 1982) (debtor not entitled to attorney's fees where county sheriff's violation of automatic stay was based on good faith misinterpretation of bankruptcy laws).

■ Nevertheless, the $1,000.00 award of attorney's fees by the Bankruptcy Judge must be modified. It appears from the record that this award included attorney's fees incurred by the debtor in defending the criminal prosecution initiated by Appellant. *See* Transcript of April 1, 1982 Hearing, at 70. Since the Appellant's initiation of the prosecution is not grounds for a contempt citation, the debtor is not entitled to compensation for expenses incurred in his defense to the prosecution. Instead, the Court will only assess attorney's fees incurred in litigating the violation of the automatic stay. *See In re Demp*, 23 B.R. 239, 240 (Bankr.E.D.Pa.1982); *In re Elder*, 12 B.R. 491, 496 (Bankr.M.D.Ga.1981). Therefore, the debtor will be awarded a reasonable attorney's fee after submitting to this Court an affidavit setting forth the legal fees incurred in connection with the instant matter.

Accordingly, it is hereby

ORDERED that the judgment and order of the Bankruptcy Court, with respect to its first finding of contempt for violation of the automatic stay on September 25, 1981, the $250.00 fine for the first contempt finding, the permanent injunction restraining Appellant from attempting to enforce Appellee's personal liability on the discharged debt, and the assessment of court costs against Appellant are hereby affirmed. It is further

ORDERED that the judgment and order of the Bankruptcy Court with respect to its second and third findings of contempt for violation of the automatic stay on September 30, 1981, and violation of the injunctive provision of the discharge order on December 11, 1981, the two $250.00 fines for the second and third contempt findings, the award of $1,000.00 as compensatory damages to Appellee, and the award of $1,000.00 in attorney's fees to Appellee are hereby reversed. It is further

ORDERED that Appellee shall be entitled to a reasonable attorney's fee for legal expenses incurred in litigating Appellant's violation of the automatic stay, but will not be entitled to attorney's fees incurred in his defense of the Moniteau County criminal prosecution. It is further

ORDERED that Appellee shall submit to this Court an affidavit setting forth an itemized account of his legal fees within twenty (20) days of the date of this order.